MARY A. SPARGER, plaintiff in error, *vs.* W. B. CUMPTON, defendant in error.

1. A having purchased land without getting a legal title, filed a bill, in which it appeared that B, who had sold to A's vendor, was not fully paid for the land, and that the legal title was still in B's control:

*Held*, that promissory notes given by A, in a compromise of said suit, to the holder of the legal title, constituted a debt for the purchase money of the land, and were within the exceptions of the homestead law.

2. The act of February 27, 1874, providing that an exemption taken under section 2040 of the Code, is subject to the purchase money, applies to exemptions laid off at any time after the passage of said act, whatever be the date of the debt on which the judgment is founded.

Homestead. Purchase money. Before Judge UNDERWOOD. Walker Superior Court. August Adjourned Term, 1874.

On April 29th, 1874, an execution in favor of Cumpton against one Harvey R. Sparger and J. M. Bond, indorser, for $400 00 principal, besides interest and cost, based on a judgment rendered at the April term, 1874, of Walker superior court, was levied upon certain lands as the property of said Sparger. A claim was filed by Mary A. Sparger, the wife of the defendant. Upon the trial of the issue thus formed, the following facts appeared :

J. M. Bond sold the property in controversy to one James Bunch, executing to him a bond for titles and taking notes for the purchase money. The lands were sold by Bunch, and from him passed through the hands of several persons, until Harvey A. Sparger purchased, paying therefor and taking a deed from one Rodgers. The original purchase money due Bond had never been paid. He instituted suit therefor against Bunch, recovered a judgment, filed his deed in the clerk's office, levied on the land, and was proceeding to sell, when he was enjoined by a bill filed by Sparger. On December 3d, 1867, this litigation was settled by a written agreement, under which Bond released all his interest in, and title to, such lands to Sparger, and the latter agreed to deliver to the former two promissory notes, each for the sum of $200 00, one due December 25th, 1868, and the other on December 25th, 1869. This settlement was made the decree of the court at the February term, 1868. The notes were not executed by Sparger until May 17th, 1869. The first was made payable one day after date, and the other as originally agreed on. These notes came into the hands of Cumpton, who sued them to judgment, and had the execution issued thereon, which is now levied on the land in controversy. On May 30th, 1874, a homestead of seventy acres was laid off in the tract to Sparger, under the 2040th section of the Code.

The jury found the property subject. The claimant moved for a new trial because the verdict was contrary to the law

and the evidence, and because the court erred in charging the jury as follows: "If you find, from the evidence in the case, that the *fi. fa.* levied on the land was predicated upon a debt owing for the purchase money of the land upon which the homestead relied on by claimant has been laid off, and that such homestead was laid off since the act of the legislature of this state was passed, to-wit: on the 27th of February, 1874, then the homestead so laid off is subject to the *fi. fa.;* in deciding whether or not the debt is for the purchase money, you will look to the agreement and the decree of the court in evidence, considered together with all the other evidence in the case admitted before you."

The motion was overruled, and the claimant excepted.

D. C. SUTTON; DABNEY & FOUCHE, for plaintiff in error.

SHUMATE & WILLIAMSON; J. C. C. CLEMENTS, for defendants.

McCAY, Judge.

1. On a careful examination of the facts of this case, (and they are rather complicated,) it will be found that the amount the plaintiff's husband agreed to pay on the settlement of the litigation was, in deed and in truth, the amount still due to the defendant in the bill for the purchase money of the land. At any rate, Sparger, though he had paid his vendor, was still bound before he could get the title to pay what his vendor was still owing for his purchase money. This amount was the amount of the notes given to the plaintiff in this judgment, who, though not the vendor of Sparger, was the holder of the legal title; still, it was the purchase money. The man who sold to Sparger's vendor was still unpaid, and that is the present debt. We think this comes clearly within the spirit, if not the letter, of the exceptions in the homestead law. It is clearly within the equity of it. That the occasion of giving the notes was the settlement of the law-suit does not affect the question. What was the law-suit about? It seems that

was a dispute as to whether Sparger's vendor had paid the purchase money. The decision of the supreme court of the United States in *Gunn vs. Barry* covers this case. That was just such a case. The homestead is good, but it is subject to this debt: See *Chambliss vs. Phelps*, 39 *Georgia*, 386. Nothing was in issue before the ordinary but the questions he is, by the statute, authorized to act upon. Whether this debt was an exception does not come within the jurisdiction of the ordinary; unless, perhaps, the party had appeared and made the question and had it decided, and failed to except to the decision. In such a case he would, perhaps, be concluded; but under an ordinary case, when there is a simple laying off of the homestead, nothing is settled but that the applicant is entitled to the homestead laid off.

2. But it is claimed that the homestead, as allowed by the act of 1843, (Code, section 2040,) is good even against the purchase money, and it is contended that the act of 1874, providing that a homestead taken under the provisions of the act of 1843, (Code, section 2040,) shall not be good against the purchase money, cannot apply to this land and this debt, since the contract was made before the law was passed. It is said that the act of 1874, if so applied, would impair the obligation of the contract, or divest the vested rights of the debtor. It is an entirely new view of the constitutional provision, prohibiting the states from impairing the obligation of contracts, to say that, under it, the states cannot give new and larger remedies than before. To take away remedies—to lessen, by any large measure, the property a creditor may go upon to collect his debt—may impair the obligation of the contract, but to say that to give a greater reach to the creditor's arm is to impair the contract on the other side, is, indeed, pushing the doctrine very far. I have never, myself, agreed to the proposition that the remedies in force at the date of a contract enter into it, and cannot be *altered* by a state. Nor do I believe any court has ever so held, since the settled rule is, that the states may alter the remedies so that they are still substantial. If the remedies in force at the date of a contract

form a part of it, they would be unalterable, since it is not the extent of the impairment that is illegal, but *any* impairment. The true view is, that to pass any law, the object and effect of which is to lessen the means the law furnishes, at the date of a contract, for its enforcement, comes within the constitutional prohibition, because such a law impairs the right of the creditor, lessens the value of his debt, and releases the debtor to that extent from his obligation to pay, and thus impairs the obligation of the contract. The contract in this case is the debtor's agreement to pay. The constitutional provision is, that this obligation shall not be impaired. The courts have held, that materially to lessen the remedies, lessens, weakens, and impairs this obligation. No court has ever held that the remedy cannot be enlarged, since in no sense can that *impair* the obligation to pay. The debtor's promise is absolute. The contract casts on him the obligation to pay. No additional remedy can add to that obligation. No law, however harsh, the object and effect of which is to compel men to do what they have promised to do, can, in any sense, be said to add to the promise—increase the obligation. It may, too, be remarked that there is no *constitutional* prohibition against *increasing* or adding to the obligation of a contract; and if a state were to pass a law that contracts, made at one rate of interest, should bear a higher rate, there is nothing in the *constitution of the United States* making such a law void. It was impairing, lessening the obligation of contracts. That was the evil, and the constitution leaves the states free to pass any laws they please which may increase or strengthen the obligation; so that, if the effect of the act of 1874 is to put a debtor under a greater obligation to pay his debts than he was before, article I., section 10, paragraph 1, of the constitution of the United States does not make the act invalid. That only prohibits *impairing* the obligation of contracts—lessening the liability of the promissor. It was left to the states to legislate at their discretion, so as to strengthen and increase the obligation, I suppose on the idea that it was impossible to add to the obligation, that being in its nature absolute. At any rate, the

states are not prohibited from *increasing* this obligation by better remedies; nor does the act of 1874 impair any vested right in the debtor or his family.   It seems absurd to say that a debtor can have a vested right to keep property against a debt contracted for its purchase, or, indeed, a vested right in any exemption.   As to him, the law grants the exemption as a boon, and because the state does not care to lend its aid to push an unfortunate to the wall.   Its own public policy requires it, and that alone is the object.   The exemption is not a right of the debtor.   Perhaps, after a homestead is laid off, under our law the wife or children have vested rights; but until then, even they have none.   If there be nothing in the act of 1874 *impairing* the obligation of the contract entered into between the parties, on the day the contract on which this judgment was obtained was made, then the right to the homestead, *as against the debt must stand according to the law at the time the homestead is applied for.*   It is then the favor is asked—it is then the state is appealed to to declare the exemption.   No right is vested until this is done, in any one.   Could not the state repeal all these laws?   Is it possible that the right to go into bankruptcy, or to take the homestead, is a *vested* right?   Could not the state restore imprisonment for debt, even as to past contracts?   These are not rights in debtors.   They are only declarations by the state that it will not exercise its power in favor of. creditors to this extent; and it is competent to exercise such power whenever the proper law-making power sees fit to determine otherwise: See *Searcy vs. Stubbs,* 12 *Georgia,* 437; *Lockett vs. Usry,* 28 *Ibid.,* 345.

Judgment affirmed.