KYLE & COMPANY vs. MONTGOMERY et al.

73 337
108 411
f109 355
109 356

1 A by law of a corporation provided that stock therein could only be transferred by a surrender of the certificates, and on the transfer book of the company kept in its office, by the person in whose name the stock appeared or by an authorized legal attorney. Another by-law reserved a lien on the stock and restricted its assignment until all debts due by, or demands against the person holding the stock should be fully paid to the company. The holder of stock contracted a debt and made a note therefor, reciting in it that he had deposited with the creditor as collateral security twenty shares of stock. On the back of the certificate was endorsed an assignment, leaving the name of the transferee, the number of shares and the date blank. It did not appear that the creditor had actual possession of the stock. The holder of the stock was indebted to the company, and the debt was not discharged until after the stock was attached. Another creditor of the stockholder sued out an attachment against him, which was levied on some of the stock, and garnishments served both on the company and on the other creditor. After the execution of the attachment, the company delivered to the other creditor twenty shares of stock, ten of which had been issued in the name of the defendant and ten to his wife, this being much more than such creditor's claim:

*Held*, that after the execution of the attachment, the other creditor had no right to appropriate more of the stock hypothecated than was sufficient to pay the debt held against the defendant. The remainder belonged to him, and was subject to the attachment.

2. A "boss" or director of an entire department of an extensive factory, employing and discharging the hands who work under him, to the number of one hundred and fifty, who receives a monthly salary of one hundred dollars, although payable at the end of every two weeks, and who is not required to do manual labor, but is expected, from his skill and intellectual fitness, to direct the work of the operatives under him, is not to be regarded as a journeyman mechanic or day laborer, within the meaning of the statute which exempts the daily, weekly or monthly wages of such persons from garnishment.

(a.) Were it an original question, this court would hesitate to hold

that the classes of persons embraced included overseers and clerks in stores; and the rulings already made will not be further enlarged.

3. The property of a non-resident debtor in the hands of a party in this state is subject to garnishment, and an exemption from garnishment declared by the law of the forum will not apply in favor of such non-resident debtor, unless by express statutory enactment. Exemption from such liability is a personal privilege as contradistinguished from a right, and the laws conferring it have no extraterritorial force. They are treated as part of the remedies for the collection of debts, are in furtherance of state policy, and can have only a local application.

(*a.*) In such a case, where the property of a resident of another state is found in this state, he cannot claim the exemption laws of this state as against a garnishment, but in this respect reciprocity is comity.

(*b.*) The right of the widow of a non-resident to dower stands on a different basis.

October 21, 1884.

Corporations. Stock. Debtor and Creditor. Collateral Security. Garnishment. Wages. Clerks. Overseers. Before Judge WILLIS. Muscogee Superior Court. May Term, 1884.

Reported in the decision.

HATCHER & PEABODY, for plaintiffs in error, cited 18 N. Y., 200; 11 *Id.*, 148; 7 Am. R., 137; 22 *Id.*, 47; 1 *Id.*, 115; Code, §§1474, 2007 (f); 58 *Ga.*, 158; 56 *Id.*, 210; 50 *Id.*, 70; 4 Conn., 544; 2 *Id.*, 579; 5 *Id.*, 246; 6 *Id.*, 552; 46 Am. R., 433; 30 *Ga.*, 99; 54 *Id.*, 139; 70 *Id.*, 741; 71 *Id.*, 748; Thomp. Homestead, §§865–6, 864, 863, 820, 23; 43 Iowa, 385; 55 *Ga.*, 233; *Bates vs. Bates* (Sept. Term, 1884); 31 Am. R., 503; 33 *Id.*, 349; 24 *Id.*, 189; 68 *Ga.*, 839; 5 Penn., 117; 72 *Ga.*, 740; 21 Ala., 261; 31 Am. R., 406, 278; 11 Ala., 164; 49 *Id.*, 174; 43 Iowa, 385; 25 Ohio, 347; Cooley Const. Lim., 492; 56 *Ga.*, 96; 54 *Id.*, 358; 71 *Id.*, 628; 8 Iowa, 141; 20 Am. R., 55, 30, 452; 1 Wood C. C., 537; 1 Wood, 309, 326; 16 Wall., 36; Code, §§1662, 9; 34 *Ga.*, 518; Story Confl. Laws, §3798 *et seq.*

GOETCHIUS & CHAPPELL; PEABODY & BRANNON, for defendants, cited Code, §3554 ; 51 *Ga.*, 277 ; 57 *Id.*, 95 ; Code,. §1763 ; 60 *Ga.*, 525.

HALL, Justice.

Kyle & Co. sued out an attachment on the 13th day of June, 1883, against Montgomery, as a member of the firm of Johnson & Co., upon the ground that Montgomery resided out of this state, and was a resident of the state of Alabama. On the same day the writ was executed by attaching eight shares of the stock of the Pioneer Co-operative Company, as the property of defendant, and by serving a summons of garnishment on " The Eagle & Phœnix Manufacturing Company," and also on " The Eagle & Phœnix Savings Bank." On the 12th day of November, 1883, W. H. Young, as president of the Eagle & Phœnix Manufacturing Company, and also of the Savings Bank, answered this summons, and in his answer denied that the latter was indebted to the defendant or had any effects belonging to him subject to the garnishment; admitted that the company at the service of the summons was indebted to defendant the sum of $33.75, and that since that time, but previous to the answer, it had become indebted to him in the further sum of $476.25, for " daily labor," and that these two sums aggregated $510.00. The answer claimed that defendant was a laborer working by the day for said company, and that these amounts were due him from day to day, and that, in order to retain his services, the company paid to him the said sums as daily wages, as it was advised it had a right to do.

The plaintiffs traversed the company's answer to the garnishment, and in their traverse alleged :

(1.) That defendant was not a daily laborer, but was an officer and superintendent of a department in garnishee'd factory.

(2.) That defendant, if a daily laborer, is not entitled

to have a portion of his wages exempted from the garnishment, because he is, and was at the time of suing out said attachment, a non-resident of this state, and was then and is now a citizen of the state of Alabama; that by the laws of that state, a daily laborer's exemption of wages cannot exceed twenty-five dollars per month, which is all that would be allowed a citizen of Georgia whose property was garnished therein, if anything at all would be allowed, and that by comity of states no more should be allowed here to a citizen of Alabama than would be allowed in that state to a citizen of Georgia.

The Eagle & Phœnix Manufacturing Company, on the 15th of May, 1884, claimed five of the eight shares of the stock of the Pioneer Co-operative Company attached. The plaintiffs in attachment joined issue with the claimants. The issues thus formed, both upon the garnishment and traverse and the claim, were, by consent of parties, submitted to the determination of the presiding judge, both as to questions of law and fact, without the intervention of a jury, who, after hearing the evidence in the case, found the stock claimed not subject, and also found in favor of the garnishee and against the plaintiffs the issue on the traverse of its answer to the garnishment. No motion was made for a new trial, and this judgment of the superior court is brought here by writ of error for review.

1. Whether the claim to any portion of the stock of the Pioneer Co-operative Company was good depends entirely upon the sufficiency of the assignment of the same to the claimant and the date thereof. According to a by-law of that company, which was put in evidence, its stock could be transferred only by a surrender of the certificate, and on the transfer book of the company, which was kept in its office, by the person in whose name the stock appears or by an authorized legal attorney. There is certainly no evidence of any transfer of defendant's stock to claimant in accordance with the requirements of this by-law. On the back of this certificate, there is a transfer, signed by

defendant and attested by " O. S. Jordan," which is left blank as to the name of the transferee, the number of shares assigned, and as.to the date of the assignment. It seems that on the 17th day of April, 1883, the defendant gave the Eagle & Phœnix Manufacturing Company his note'for $190.00, due at twelve months, which recited that he had deposited with them as collateral security for the debt twenty shares of the stock of the Pioneer Co-opera tive Company; that they had actual possession of this stock nowhere appears; on the contrary, it is pretty evident from the testimony they did not. Another by law of the Pioneer Company reserves a lien on this stock, and restricts its assignment until all debts due or demands of the person holding the stock to the company sh ill be fully paid; that the defendant, the holder of this stock, was indebted to the company, appears from the evidence of its president, who shows that this debt was not discharged until some time after the stock was attached at the plaintiff's suit. On the 23d of April, 1884, the Pioneer Company received from the Eagle & Phœnix Manufacturing Company twenty shares of stock, ten shares of which were issued to defendant and ten shares to his wife. In reference to this assignment, left blank as to date and as to the name of the assignee, the president of the Pioneer Company says that he saw it made, but never saw the note, for the payment of which it was pledged to the manufacturing company; it was signed at the time the note was supposed to have been given; must have been signed two years ago, long before plaintiffs' attachment was served. It will be remarked that the note in question bears date on the 17th of April, 1883, and that the attachment was served on the 13th of June following; the trial at which the witness testified was had on the 19th of May, 1884; and these dates show that his account of the matter could not have been correct; his memory as to the time was certainly inaccurate and perhaps frail. The claimant held no other debt against the defendant, as shown by this record,

than the small debt of one hundred and ninety dollars, for which it seems to have secured to itself stock of the value of between $900 and $1,000, and this too after the service of plaintiffs' attachment.   Defendant paid his debt to the Pioneer Company after the service of plaintiffs' attachment.   Two shares of this stock, at its sworn market value, would have been nearly, if not quite, sufficient to pay this note. What was the amount of the demand of the Co-operative Company against the defendant does not appear, but whatever it was, it was, according to the evidence, paid by him; out of what fund, or how procured, is not shown. These circumstances give to this transaction with the claimant a very suspicious appearance, requiring explanation before the claimant is entitled to the stock as against these attaching creditors.   It follows that the court erred in his judgment in finding for the claimant.   The dealings between these parties seem to have been conducted with a full knowledge of the requirements of the by-laws of the Pioneer Company in relation to the conditions upon which its stock could be transferred.   After the execution of this attachment, the Eagle & Phœnix Manufacturing Company had no right to appropriate more of the stock hypothecated than was sufficient to pay the debt it held against the defendant; the remainder belonged to him, and was subject to the attachment.   So far from observing this just and equitable rule, this manufacturing company, in total disregard of the rights of the plaintiffs, managed to appropriate to itself, not only the entire ten shares of the defendant's stock, but also ten shares issued in the name of his wife.   This transaction, on its very face, affords evidence of unfairness, and an intent to delay and hinder the plaintiffs in the collection of their debt, and which, without satisfactory explanation, would subject the property claimed, at least to the extent of any excess beyond the claimant's demand against the defendant, as it existed when the attachment was served.

The liability of the Pioneer Company, growing out of

the service of the attachment and its participation there-after in the dealings between the defendant and claimant in reference to the stock attached, is a question not made by the record, and upon which we pass no judgment.

2. It is undeniable that the wages of "journeymen mechanics" and "day laborers," which are payable daily, weekly or monthly, whether in the hands of their employers or others, are exempt from liability to the process of garnishment. Code, §3554. But we do not think that the boss or director of an entire department of an extensive factory, employing and discharging the hands who work under him, to the number of one hundred and fifty or two hundred, who receives a monthly salary of one hundred dollars, although that salary is payable at the end of every two weeks, who is not required to do manual labor, but is expected, from his skill and intellectual fitness, to direct the work of the operatives under him, is to be regarded either as journeyman mechanic or day laborer within the meaning of this statute. The meaning of these terms was sufficiently enlarged when they were made to embrace the overseer of a plantation, who not only directed the operations of the hands employed, but labored with them, and also clerks employed in stores. 25 *Ga.*, 571; 46 *Id.*, 466; 51 *Id.*, 576. To apply this to the case of this defendant would be to extend its scope beyond any meaning ever contemplated by the legislature in using the terms "journeymen mechanics" and "day laborers," and would embrace civil engineers, master machinists, architects, superintendents of stores and counting houses, of railways and railway shops, etc. Further than this court has already gone in this direction, we do not propose to go, and were the application of this provision to overseers on plantations and to clerks in stores an original question, we should hesitate long before giving them the benefit of it. To this extent the court has already gone, and we feel obliged to follow the precedents thus set; we can, however, make no others by what we consider an ex-

tremely liberal, if not a loose construction of the terms in question.

3. It is well settled, too, that the property of a non-resident debtor in the hands of a party in this state is subject to garnishment. In *Molyneux vs. Seymour, Fanning & Co.*, 30 *Ga.*, 440, this principle was recognized, Lumpkin, J., who delivered the opinion, remarking, "If a non-resident debtor have property in the hands of another, it may be reached by garnishment, the property itself, as well as the garnishee, being within the jurisdiction of the court," and citing numerous text-writers and cases from other states to the point. While this is true, it would be difficult, if not impossible, to find any case in which exemption from garnishment, declared by the law of the forum, has been applied in favor of such non-resident debtor, unless by express statutory enactment. Exemption from such liability is a personal privilege as contradistinguished from right's (Cooley's Const. Lim., 5th Ed., 491, 492), and the laws conferring it have no extra-territorial force; they are merely treated as being a part of the remedy for the collection of debts, and are in furtherance of state policy, and can have only a local application. 21 Ala. R., 261. Dargan, C. J., who delivered the judgment of the court in that case, which is much like this in its facts, ruled distinctly that, although the property attached was exempt from levy and sale by the laws of the defendant's domicile, yet the act exempting it was "local," and could only protect the property exempted by it from execution so long as the property remained within the limits of that state; but when it passed beyond her jurisdiction, it then lost the protection of her statute, and by being carried into the state where it was taken in execution, the owner did not acquire a right to the exemption provided by the laws of that state.

The decisions of the courts of Alabama, and many other states, to the same effect, are numerous, and seem to have been well considered.

The defendant in this case is a resident of Alabama, and

we have seen that this state does not extend the immunities and privileges of its exemption laws to citizens and residents of other states, whose property is found in that state. Under the comity of states, therefore, a citizen and resident of Alabama cannot claim the benefit of our exemption laws, when his property happens to be seized on process here. In this respect "reciprocity is comity." This is the idea embodied in our Code, §§9, 1662, and which is ably discussed by Harris, J., in *Jackson vs. Johnson et al*, 34 *Ga.*, 511 to 523.

The right of the widow of a non-resident to dower in lands of which her husband died seized and possessed in this state stands, not upon the general terms of the law recognizing it, but upon the principle that it is a complete vested right in property, of which she cannot be deprived without impairing the obligation of the contract out of which it sprang, and under which it was consummated; this is beyond the scope of legislative powers. 60 *Ga.*, 525, and citations. The exemption in question confers no such right, but is a "privilege, a mere grace and favor" bestowed by the state, and is dependent on its will; it pertains to the remedies afforded by its legislation. 54 *Ga.*, 355, 358, 359; 36 *Id.*, 94, 96, 97. As was well remarked in this last case, "debtors have no vested rights not to pay their debts. What they have and what they acquire in the state may be subject to legal process for the satisfaction of creditors. If the state will furnish the process, and allow it to run, nothing that debtors own is beyond its reach; . . . an exemption which exists by statute may be withdrawn by statute."

We find that there was error in sustaining the claim interposed to the stock attached, and also in determining the issues made upon the traverse of the answer to the garnishment against the plaintiffs and in favor of the defendant, whose claim to exemption was made by the garnishee. The plaintiffs were entitled to judgment against the garnishee, upon the evidence in the case, upon both

the grounds above set forth; and there should be another hearing of the claim issue. It is not essential to decide other questions made in the case.

Judgment reversed.