HOUSTON, Justice.[1]
The intervenors in a class action currently pending in the St. Clair Circuit Court petition for a writ of mandamus directing the trial court (1) to allow them to appear at the “fairness hearing” and object to the proposed settlement; (2) to allow witnesses identified by intervenors to testify at the fairness hearing and allow intervenors to cross-examine other parties’ witnesses at the hearing; and (3) to consider the objections interposed by interve-nors to the proposed settlement.[2] We deny the writ.
*506 In 1993 and 1994, two actions were filed in the St. Clair Circuit Court seeking in-junctive relief, as well as compensatory and punitive damages for, among other things, alleged diminution of the value of riparian properties and alleged interference with the use and enjoyment of riparian properties. The plaintiffs alleged that the diminution in value and the interference arose from the alleged release of polychlorinated biphenyls (“PCBs”) and other substances directly or indirectly by Monsanto Company, Solutia, Inc., and William DeFer (all collectively referred to as “Monsanto”) into Snow Creek, Choccolocco Creek, and Lake Logan Martin. The trial court certified a class containing plaintiffs from both of these lawsuits. The class was an opt-out class, under Rule 23(b)(3), Ala. R. Civ. P., consisting of:
“[A]ll persons who as of October 1, 1993, and thereafter, were owners of riparian properties (excluding mortgagees and excluding lessees with no contractual right to purchase), said real properties being located on Choccolocco Creek, at or below the point where Snow Creek intersects with Choccolocco Creek, and all persons who, as of October 1, 1995 and thereafter, were owners of riparian rights (excluding mortgagees and excluding lessees with no contractual right to purchase), said real properties being located on Lake Logan Martin, when Lake Logan Martin is at its full operating pool level from the Interstate 20 bridge at Riverside to the Logan Martin Dam, in St. Clair and Talladega Counties, Alabama.”
Notice was given to all class members, and the parties prepared for trial. Both parties completed extensive discovery, including numerous depositions of as many as 20 expert witnesses. In addition, the parties participated in mediation under attorney-mediator, Rodney A. Max; the mediation resulted in a settlement.
The terms of the settlement require Monsanto to create two separate funds: (1) a “Monetary Fund” of $22.7 million, and (2) a “Remediation Fund” of at least $21 million. The Monetary Fund will be paid to class members. The Remediation Fund will fund an investigation by the Alabama Department of Environmental Management (“ADEM”) into the environmental problem the plaintiffs allege Monsanto has caused, as well as the resulting action taken by ADEM to correct the problem. The settlement also requires that if the investigation and correction require more than $21 million, Monsanto will put more money into this Fund.
On June 16, 1999, the trial court entered an order preliminarily approving the settlement, and it ordered that the class members be notified of the provisions of the settlement. The order also scheduled a fairness hearing for July 30, 1999, in order to consider final approval of the settlement agreement.
On July 20, 1999, the intervenors filed objections to the settlement and moved to intervene in the underlying action so that they could appear at the fairness hearing in order to raise their objections to the settlement agreement. The nine interve-nors were the only objectors out of approximately 4,600 class members. The trial court issued an order that stated:
“The proposed intervenors have submitted written and oral arguments in support of their [motion to intervene] .... Having considered the mate *507 rials and arguments, the court concludes that the Motion for Intervention should be granted. The Court is mindful of the fact, however, that only nine (9) individuals from a class of approximately 4,600 members have expressed any dissatisfaction with the settlement reached here, which is less than two-tenths of one percent (.2%) of the overall class of property owners. The Court recognizes the need to balance these nine (9) individuals’ rights with those of the defendants and the 4,600 class members who apparently are content with the settlement agreement.
“It is, therefore, hereby ORDERED, ADJUDGED AND DECREED that the Motion for Intervention be GRANTED, but subject to the following limitations and conditions:
“1. The Intervenors shall be allowed to participate in this case solely for the purposes of pursuing their own rights against these defendants. As stated above, all but a small fraction of the class members are satisfied with the settlement. The Court therefore, sees no reason ivhy these nine (9) intervenors should further delay the approval and implementation of a fair and reasonable settlement for the entire class.
“2. Nor does the Court believe that these intervenors should be subject to or adversely affected by the final judgment in this action. Accordingly, the Court determines that these intervenors should be and hereby are EXCLUDED from the class so that they may pursue their individual claims against these defendants. The Court recognizes its inherent power under Rule 23(d), Ala. R. Civ. P., to exclude these intervenors from the class settlement, regardless of whether this action was certified under Rule 23(b)(1), 23(b)(2), or 23(b)(3), Ala. R. Civ. P. Additionally, the Class Action Settlement Agreement reached between the parties contemplates that the Court may permit up to 100 members of the settlement class to withdraw from the settlement before any defendant may terminate the agreement. By excluding these intervenors from the class, the Court determines that they are not bound by the terms of the Class Action Settlement Agreement and further finds that this settlement shall have no preclu-sive effects as to the rights of these intervenors. In doing so, the Court acknowledges the need to balance the equities of the defendants’ desire to resolve all claims in a single proceeding against the individual intervenors’ interest in having their own day in court. And, because the individuals are already represented to be plaintiffs, or because there are over 2,000 other plaintiffs who have claims filed against Monsanto in the Abernathy case, the Court strikes a balance in favor of excluding these few disgruntled class members from this settlement. Thus, the Court hereby construes the intervenors’ objections as a desire not to be included in this class action nor to be bound by the final judgment rendered herein.
“3. Having excluded the intervenors from any participation in the class action settlement, this Court sees no reason why they should remain as parties to this particular proceeding.... The Court, therefore, orders that the interve-nors’ claims should be and hereby are SEVERED from this action. Once severed, those claims may be pursued by the intervenors free of any preclusive effects of the settlement, and therefore, there is no prejudice to the intervenors arising from a severance.”
(Emphasis added.) In this petition, the intervenors do not object to being excluded from the class, but, instead, they complain only that after they were excluded they were not allowed to object to the settlement agreement that the remaining members of the class intended to enter into.
*508 Mandamus is an extraordinary, remedy that is only available when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court. Ex parte Butts, 775 So.2d 173 (Ala.2000); Ex parte United Serv. Stations, Inc., 628 So.2d 501 (Ala.1993).
Both the plaintiffs and Monsanto argue that the trial court correctly precluded the intervenors from raising objections to the settlement. The plaintiffs argue that the intervenors have no standing to object to the settlement because they have been excluded from the class, and, therefore, the settlement will have no binding effect on them whatever. In support of this argument, they cite a number of cases from federal courts. All of those cases stand for the proposition that one who is not a class member cannot object to a proposed settlement that the members of a class are attempting to enter into. Gould v. Alleco, Inc., 883 F.2d 281 (4th Cir.1989); In re Union Carbide Corp. Consumer Prods. Business Sec. Litigation, 718 F.Supp. 1099 (S.D.N.Y.1989). The United States Court of Appeals for the Fourth Circuit has stated:
“Beginning from the unassailable premise that settlements are to be encouraged, it follows that to routinely allow non-class members to inject their concerns via objection at the settlement stage would tend to frustrate this goal. Were the rule as Weisman contends, every objection from a non-class member would trigger an examination by the court of the effects of the proposal on the objector.... We hold, therefore, that non-class members have no standing to object ... to a proposed class settlement.”
Gould, 883 F.2d at 284. Furthermore, a nonparty is not allowed to object even if he was originally a member of the class. See Root v. Ames Department Stores, Inc., 989 F.Supp. 274 (D.Mass.1997). We agree with this rationale of the federal courts.
The intervenors have been excluded from the class and are not constrained by the terms of the settlement. Instead they “remain[ ] in the same position with respect to [Monsanto] as before the settlement agreement was entered,” and if they have “any claims against [Monsanto], [they] may assert them in [their] own civil action.” Root, 989 F.Supp. at 275. Because they are no longer members of the class, they no longer have standing to object to the settlement the class wishes to enter. Therefore, the trial court correctly ruled that the intervenors could not object to the settlement. Likewise, because they do not have standing in the settlement proceedings, the trial court correctly held that the intervenors could not obtain discovery pertaining to those proceedings.
WRIT DENIED.
HOOPER, C.J., and SEE, BROWN, and ENGLAND, JJ., concur.

. This case was originally assigned to another Justice on this Court; it was reassigned to Justice Houston on May 4, 2000.

. There are nine intervenors: Linda J. Anderson, Billy Burt, Dorothy Cunningham, Vaneal Fanning, Andrew Frenier, Verby Fre-nier, Jammed: Gravel Company, Inc., James *506 B. Johnston, and Karen Paulovich. All nine were originally members of the class in this case. In addition to objecting to the proposed settlement, they also moved to intervene into the fairness hearing. They have referred to themselves as "the intervenors” in their briefs, and we have referred to them by the same term throughout this opinion.