S04A1995, S04A2010. AMERICAN MEDICAL SECURITY, INC. et al. v. PARKER et al. (two cases).
(612 SE2d 261)

FLETCHER, Chief Justice.

Appellees in these companion cases filed an action in a Georgia court seeking to enjoin the proposed settlement in an Alabama class action suit against appellants. The proposed settlement was to bind both Alabama and Georgia plaintiffs that were part of the Alabama class. It would not, however, bind appellees because they had been excluded from the Alabama class. Notwithstanding this fact, the Georgia trial court granted appellees' request for an injunction against the settlement and held appellants in contempt for violating the injunction. Because appellees had been excluded from the Alabama class, they lacked standing to challenge the settlement. Therefore, we reverse.

---

On June 11, 2002, an Alabama class action was initiated against American Medical Security, Inc. and United Wisconsin Life Insurance Company (appellants) over the rating schemes used in certain group medical insurance policies sold by appellants. The plaintiff sought certification of a class that would include both Alabama and Georgia residents insured by appellants. Appellants and plaintiff negotiated a settlement of the claims and submitted a stipulation of settlement to the Alabama court on March 11, 2004. This stipulation included the method by which to evaluate and settle claims by the different claimants, and excluded all "persons that have pending against one or more of the named defendants on the date of the Court's certification order any individual action wherein recovery sought is based in whole or in part on the type of claims asserted in this Action."

On March 15, 2004, almost two years after the Alabama suit was initiated, Stephen and Anne Parker, on behalf of themselves and others insured by appellants in Georgia (appellees), filed suit against appellants in Georgia challenging the same insurance policies based on the same facts at issue in the Alabama suit. Appellees alleged that the policies were illegal under Georgia law, asserted a RICO claim,[1] and sought injunctive relief plus compensatory and punitive damages for breach of contract, fraud, and conspiracy, among other allegations.

On April 6, 2004, the Alabama court entered an order accepting the stipulation of settlement, temporarily certifying the settlement class, approving the proposed notice to the class and ordering that it be sent, and setting a schedule for the fairness hearing on the proposed settlement. Appellees then filed a motion in the Georgia court on May 17, 2004 seeking injunctive relief against the proposed Alabama settlement.

The Georgia court determined that the stipulation of settlement imposed Alabama law on all Georgia parties for all purposes, even though there were material differences between Alabama and Georgia law. Finding that appellees had no adequate remedy at law and would suffer irreparable harm, the trial court enjoined appellants from issuing the settlement notice to or settling the claims of any Georgia resident in the Alabama action. Appellants appeal from that ruling in Case No. S04A1995.

Appellants sent notice to the class members as ordered by the Alabama court, and on July 15, 2004, the Georgia court held appellants in contempt for violating the Georgia injunction. Appellants appeal from that ruling in Case No. S04A2010.

---

[1] Georgia Racketeer Influenced and Corrupt Organizations Act, OCGA § 16-4-1 et seq.

Finally, on July 28, 2004, the Alabama court issued another order clarifying that appellees were specifically excluded from the Alabama class, and that the claims of Georgia residents who remained in the Alabama class would be evaluated in accordance with Georgia law pursuant to the U. S. Supreme Court's decision in *Phillips Petroleum Co. v. Shutts*.[2]

1. It is a well-settled rule that only class members have standing to challenge a class settlement.[3] Before the Georgia action was even filed, the proposed settlement filed in the Alabama case specifically excluded "persons that have pending against one or more of the named defendants on the date of the Court's certification order any individual action wherein recovery sought is based in whole or in part on the type of claims asserted in this Action." After appellees brought suit in Georgia, the Alabama court clarified that appellees were not part of the Alabama class by excluding them by name.[4] As non-class members whose rights and remedies were not affected by the Alabama settlement, appellees had no standing to challenge that settlement on an individual basis.

2. Appellees also lack standing to challenge the Alabama settlement as potential representatives of a Georgia class. Appellees do not have standing to do indirectly what they cannot do directly. The well-settled rule — that only class members can challenge a class settlement — remains the same even if appellees sought to act in a representative, rather than individual, capacity.[5]

Furthermore, appellees could not be adequate potential class representatives for purposes of challenging an Alabama settlement from which they had been explicitly excluded.[6] The issue of whether appellees are qualified to represent Georgia plaintiffs in their Georgia class action is not before us today; what is before us is whether the

---

[2] 472 U. S. 797 (105 SC 2965, 86 LE2d 628) (1985).

[3] See, e.g., *Ex Parte Anderson*, 807 So.2d 505, 508 (Ala. 2000); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 342-343 (N.D. Ga. 1993); *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989).

[4] It was within the Alabama court's discretion to so exclude appellees once they elected to pursue the Georgia action, which is apparently undisputed. See *Ex Parte Anderson*, 807 So.2d at 507 (court has inherent power under Alabama's version of class action rule to exclude potential plaintiffs who were not "subject to or adversely affected by the final judgment" in class action); *Ex Parte Green Tree Fin. Corp.*, 723 So.2d 6, 7-8 (Ala. 1998) (class excluded "all persons who have pending and/or previously filed . . . individual (non-class) lawsuits against [Defendant] for the same claims advanced by Plaintiffs herein").

[5] See *Chincilla v. Star Cas. Ins. Co.*, 833 So.2d 804, 805 (Fla. App. 2002) (when Chincilla's insurance policy was reinstated for reasons other than to "pick [her] off" as the class representative, she lost standing to be the class representative).

[6] OCGA § 9-11-23 (requiring class representatives that will adequately protect the class); Linda S. Mullenix, *Standing and Other Dispositive Motions After Amchem and Ortiz: The Problem of Logically Antecedent Inquiries*, 2004 Mich. St. L. Rev. 703, 705 (adequacy of class representatives often tied to the question of standing).

appellees had standing to ask the Georgia court to enjoin the Alabama settlement. Adequacy, as well as commonality, must be viewed accordingly. Because appellees had been excluded from the Alabama class, they were not adequate representatives for purposes of challenging the Alabama settlement, nor did they stand in the same position as those that had not been so excluded for purposes of challenging the settlement.

The dissent believes that Georgia plaintiffs will be disadvantaged by the Alabama settlement, even though the Alabama court expressly stated that it would apply Georgia law to Georgia class members, and for this reason attempts to circumvent or diminish the importance of appellees' standing. But standing is necessary before issues of equity, which the dissent goes to great lengths discussing, can be considered. As this Court stated in *Robinson v. The Landings Association*:

> Generally, the granting of an injunction rests in the sound discretion of the trial judge and should not be resorted to except in clear and urgent cases. . . . *However, before the trial court can exercise its discretion with regard to issuing a permanent injunction, the party seeking the injunction must first show that it has a legal right to relief.* The moving party has the burden of establishing the right to such relief.[7]

For these reasons, appellees did not have standing to challenge the Alabama settlement. Accordingly, the grant of the injunction is reversed.

3. Because the injunction was invalid, appellants cannot be held in contempt for violating it.[8] Therefore, the finding of contempt is also reversed.

4. Because we hold that appellees lack standing, we need not address appellants' other claims on appeal.

*Judgment reversed. Sears, P. J., Carley and Thompson, JJ., concur and concur specially; Benham, Hunstein and Hines, JJ., dissent.*

CARLEY, Justice, concurring and concurring specially.

I concur fully in the majority's holding that, because appellees lacked standing to seek equitable relief in Georgia as to the proposed Alabama settlement, the trial court erroneously granted the injunction and then compounded that error by finding that appellants were

---

[7] (Emphasis supplied.) 264 Ga. 24, 25 (440 SE2d 198) (1994).

[8] See, e.g., *McKinnon v. Neugent*, 226 Ga. 331, 333 (174 SE2d 788) (1970).

in contempt of its order. I write separately to expound on why I believe that this Court correctly reverses the trial court.

The dissent finds it "important to stress" that Georgia law recognizes the inherent equitable power of this state's courts to order a party over whom it has personal jurisdiction either to act or to refrain from acting in regard to litigation being conducted in another state. P. 211. In support of that proposition, however, the dissent does not cite any authority which holds that one who is not himself immediately and directly affected by a lawsuit pending in another state has the requisite standing to invoke that inherent power so as to seek and obtain from a Georgia court an order which controls the actions of one who is a party to the foreign action. Compare *Sanders v. Yates*, 215 Ga. 218 (109 SE2d 739) (1959) (Georgia defendants in pending Tennessee lawsuit granted injunction by Georgia court against prosecution of that action by Georgia plaintiffs); *Guerra v. Texaco Exploration & Production (In re Lease Oil Antitrust Litigation (No. II))*, 48 FSupp.2d 699 (S.D. Tex. 1998) (which does not address inherent judicial power, but is based entirely on a federal court's exercise of its authority under the All Writs Act, 28 USC § 1651 (a), which statutory power is " 'firmly circumscribed.' [Cit.]" *Corley v. Entergy Tech. Holding Co.*, 297 FSupp.2d 915, 917 (II) (E.D. Tex. 2003)).

Although Georgia courts are invested with inherent equitable power, they are not authorized to exercise that power indiscriminately. To have standing to seek injunctive relief in Georgia, a plaintiff must show that he is in great danger of suffering an impending injury for which he does not have an adequate and complete remedy at law. See *Hobbs v. Peavy*, 210 Ga. 671, 673 (4) (82 SE2d 224) (1954). So long as appellees remained parties to the Alabama action, they lacked standing to seek equitable relief in Georgia, because they had an adequate remedy at law. They could have contested the settlement in Alabama. See *Emmons v. City of Arcade*, 270 Ga. 196, 198 (2) (507 SE2d 464) (1998) (holding that, "[g]enerally, when administrative review is available, that procedure is an adequate remedy at law, precluding equitable relief. [Cit.]"). Rather than remain parties to the Alabama action, however, appellees filed suit against appellants in Georgia and then sought injunctive relief here against enforcement of the Alabama settlement. As the majority correctly notes, the settlement of the Alabama suit was never intended to affect the legal rights of anyone who, having elected to opt out of that class action, filed his own individual claim against appellants. Thus, even assuming for the sake of argument that, so long as they remained parties to the Alabama action, appellees were not relegated to contesting the settlement in that state, they certainly lost whatever standing they might otherwise have had to invoke a

Georgia court's inherent equitable authority when they filed their own class action lawsuit against appellants here. See *Whitehead v. Hasty*, 235 Ga. 331 (219 SE2d 443) (1975) (question of propriety of injunctive relief becomes moot when party no longer would derive any benefit therefrom). At that point, appellees were no longer members of a class facing the possibility of being harmed by the proposed settlement of the Alabama lawsuit and, thus, they did not have standing to assert an equitable claim to enjoin it. See *Shaffer v. City of Atlanta*, 225 Ga. 184 (167 SE2d 151) (1969) (pending appeal dismissed as moot after litigation which party sought to enjoin ended).

The dissent maintains that appellees' "standing" is established as a matter of law because, at the time they sought injunctive relief in Georgia, the Alabama class had not been formally certified. Insofar as the "harm" component of "standing" to seek equitable relief is concerned, however, the decisive factor is not the date that the Alabama class was certified, but rather whether appellees opted in or out of participation therein. See *Phillips Petroleum Co. v. Shutts*, 472 U. S. 797, 810-811 (II) (105 SC 2965, 86 LE2d 628) (1985) (holding that "[i]n most class actions an absent plaintiff is provided at least with an opportunity to 'opt out' of the case, and if he takes advantage of that opportunity he is removed from the litigation entirely."). As the dissent itself recognizes, appellees filed their own suit in Georgia, and thereby "opted out" of the Alabama class action, well before they ever sought injunctive relief here. "[T]he general rule is that an action at law will not be enjoined at the instance of one not a party thereto, particularly where the judgment in the action will not preclude the rights of such person." *Ferrell v. Wight*, 187 Ga. 360, 365 (4) (200 SE 271) (1938). Thus, appellees clearly lacked "standing" when they invoked the Georgia court's inherent equitable jurisdiction. The adequacy of the Alabama settlement had not become a moot issue entirely. However, it had become moot as to appellees, leaving those who remained parties to the Alabama action with the same decision whether to contest the settlement there or, as appellees had done, file suit in Georgia.

In support of a contrary holding, the dissent takes the anomalous position that the very factor demonstrating appellees' loss of any standing as to the Alabama action represents, instead, a viable jurisdictional basis for the Georgia court's exercise of its inherent equitable power. It accepts the contention that, once appellees had filed their own class action lawsuit in Georgia, they thereby became entitled "to protect themselves and the Georgia plaintiffs they represent against the imminent and irreparable harm created by appellants' actions." P. 211. As the majority suggests, however, the obvious fallacy in that argument is that appellees themselves were no longer

in a class which was threatened by the Alabama settlement and, thus, could not claim to represent those who were. Any other Georgia resident who, unlike appellees, had not filed his or her own individual suit against appellants and who remained a member of the Alabama class would be entitled to receive the notice approved by the court in that state and, thus, would have the opportunity to determine on his or her own whether to accept the settlement or, as appellees had done, to opt out and litigate in Georgia courts. See *Phillips Petroleum Co. v. Shutts*, supra at 812 (II) (holding that "a fully descriptive notice . . . sent first-class mail to each class member, with an explanation of the right to 'opt out,' satisfies due process."). Thus, under the circumstances existing at the time appellees sought injunctive relief, the only "harm" that they themselves may have faced from the Alabama settlement is that it had the potential to limit the number of those Georgia residents who ultimately joined them in their own class action lawsuit in this state. Neither appellees nor the dissent cites any authority for the proposition that appellees have an individual right to maximize the number of plaintiffs in their Georgia action against appellants.

With regard to the Georgia residents who did remain members of the Alabama class, the purported "harm" identified by the trial court and the dissent is that the "proposed class action settlement . . . imposed on [them] terms that were 'illegal and unconscionable' under Georgia law and . . . was entered into for the purpose of evading Georgia law." P. 211. However, this assessment of the Alabama settlement is clearly erroneous. It "imposed" nothing on anyone, since it was a "proposed" settlement, and every Georgia resident would be given notice of his right to "opt out" and thereby avoid being bound by its terms. See *Phillips Petroleum Co. v. Shutts*, supra. More importantly, all aspects related to the settlement, including the sufficiency of the notification to be sent to the Georgia members of the class, were subject to the oversight and approval of the Alabama court. The dissent does not cite any authority for holding that a Georgia trial court has the inherent authority to second guess the ongoing control by a court of another state of litigation currently pending before it.

In any event, the well-recognized principle of comity would preclude the exercise by a Georgia court of such intrusive authority even assuming that it existed. "Judicial comity" is defined as "[t]he respect a court of one state or jurisdiction shows to another state or jurisdiction in giving effect to the other's laws and judicial decisions." Black's Law Dictionary (7th ed.), p. 262. The judiciary of this state is required to "enforce . . . comity, unless restrained by the General Assembly, so long as its enforcement is not contrary to the policy or prejudicial to the interests of this state." OCGA § 1-3-9. As the majority notes, the Alabama court expressly indicated that the claims

of those Georgia residents who remain in the class action before it would be evaluated in accordance with Georgia law pursuant to controlling federal precedent. To suggest that the Alabama court would approve a settlement that was illegal and unconscionable is completely contrary to the notion of comity, which requires that we assume that the Alabama court will exercise the same competency and circumspection in protecting the rights of the litigants who are properly before it as will be exercised by the Georgia court presiding over appellees' action. See *Engel v. Scheuerman*, 40 Ga. 206, 211 (1869). The holding of the Supreme Court of the United States in *Webb v. Webb*, 451 U. S. 493, 499 (101 SC 1889, 68 LE2d 392) (1981) addresses comity between the federal and the state courts, but is equally applicable when comity among the courts of the various states is involved:

> [A]lthough the States are sovereign entities, they are bound along with their officials, including their judges, by the Constitution and the [applicable] statutory law. Principles of comity in our [judicial] system require that the state courts be afforded the opportunity to perform their duty . . . .

Comity has been defined as "reciprocity." *Kyle & Co. v. Montgomery*, 73 Ga. 337, 345 (3) (1884). Thus, the consideration for foreign recognition of the plenary authority exercised by Georgia courts over lawsuits pending before them is the recognition of the equivalent power that is exercised by the courts of the other states over lawsuits pending before them. If a Georgia trial court had the inherent equitable power to control the conduct of a lawsuit pending in another state, then the trial courts of the other states would have the same inherent equitable power to control a Georgia trial court in its conduct of an action pending before it. Thus, if the trial court's orders in this case were not reversed, this Court would be serving notice on the courts of Alabama and of all the other states that they are no longer required to defer to Georgia courts in the exercise of jurisdiction over lawsuits pending here, because our judiciary is not compelled to give any deference to the jurisdiction exercised over actions pending before them.

Although the dissent does not expressly address comity, it implicitly rejects its applicability by agreeing with appellees' contention that they are not "seeking to enjoin the Alabama court." P. 211. However, this assertion ignores the fact that the injunction was intended to prevent appellants from issuing a notice which the Alabama court had approved and ordered sent to the Georgia residents who remained members of the Alabama class. That the Georgia court's order violated the principle of comity is apparent from the fact

that the grant of the injunction placed appellants in the untenable position of having to choose in which jurisdiction they would be forced to defend against a citation for contempt. If they complied with the Georgia injunction, they faced being held in contempt by the Alabama court which had approved the notice and ordered it sent to the appropriate members of the class. On the other hand, if appellants complied with the order of the Alabama court, they subjected themselves to punishment for defying the injunction issued by the Georgia court. Under these circumstances, the Georgia court used appellants as the indirect means to control the conduct of the trial court presiding over the litigation in Alabama. As the majority correctly points out, a party cannot do indirectly what he or she cannot do directly. Since the dissent concedes that appellees cannot enjoin the Alabama court directly, then it is likewise true that appellees cannot obtain that unauthorized result indirectly by seeking to enjoin appellants' compliance with an order of that court.

In essence, appellees maintain that they are entitled to invoke a Georgia court's inherent equitable jurisdiction because they are citizens of this state. However, "[c]itizenship, or residence on the soil of Georgia, it is apprehended, furnishes no legal or proper reason for the exercise of jurisdiction, in behalf of [appellees]." *Jackson v. Johnson*, 34 Ga. 511, 515 (1866). They were entitled to equitable relief only if they showed imminent and irreparable harm resulting from the settlement of the Alabama action. Because they were not affected by that settlement, they lack the standing to assert a viable claim for injunctive relief. The Georgia trial court erred in granting that relief, and thereby violated the fundamental principle of comity. Because the injunction was invalid, appellants properly complied with the directive of the Alabama court and cannot be cited for contempt in Georgia. Therefore, this Court correctly reverses the trial court's erroneous orders, thereby obviating the potential devastating consequences that allowing the injunction and contempt citation to stand would have on Georgia's compact with our sovereign sister states.

I am authorized to state that Presiding Justice Sears and Justice Thompson join in this opinion.

HUNSTEIN, Justice, dissenting.

The majority erroneously holds that appellees must be members of the Alabama class in order to have "standing" to seek the injunctive relief granted by the trial court. In so holding the majority muddles the standing required of a party to intervene in a class action with a party's right to obtain equitable relief for protection against imminent and irreparable harm. To the extent the majority's "standing" requirement is just a misstatement of the rule that only those persons who may be injured by an act may seek to enjoin that act, the majority

is wrong that appellees have not shown the requisite personalized harm, both individually and in their representative capacities. The majority's rejection of the individualized harm is based on its improper refusal to apply the facts as they existed at the time the trial court granted the injunctive relief; its refusal to recognize the harm to appellees in their representational capacity stems from its misunderstanding of the nature of the equitable relief sought by appellees and the well-established law authorizing Georgia courts to grant that relief. The end result of the majority's confusion is the undermining of the authority of Georgia courts to uphold this State's law and protect our citizens from illegal and unconscionable class action settlements that Georgia domiciliaries have negotiated in foreign states for the purpose of evading Georgia law. Because the majority's reversal of the trial court is unwarranted both factually and legally, as detailed below, I must dissent.

The Alabama suit was filed in June 2002. Although the majority stresses that this was "almost two years" before appellees' suit was filed in Georgia, nothing in the record refutes appellees' assertion that they were unaware of the Alabama action when they filed their class action. Indeed, the record in this case reflects the lackadaisical manner in which the Alabama litigation was conducted: although filed in June 2002, it was not until December 2003, 18 months later, that the Alabama court pushed the parties to begin the process of certifying the class when it issued an order setting forth a schedule of class certification deadlines. In contrast, in appellees' suit — filed in March 2004, a mere three months after the Alabama scheduling order — the entire certification process was completed and the actual class was certified by the court less than six months after the filing date.

Appellants and the Alabama plaintiff negotiated a proposed stipulation of settlement which contained a definition of the class members covered by the agreement. It must be emphasized that that definition remained subject to change pending final approval of the settlement by the Alabama court. It was after the Alabama court gave *temporary* approval to the proposed settlement that appellees sought the equitable relief at issue in this case. They asked the trial court to enjoin appellants from sending out notices of the proposed settlement to the Georgia members of the Alabama class because those notices inadequately informed them of the many legal remedies under Georgia law they stood to forfeit if they did not affirmatively opt out of the Alabama class action. The trial court granted the requested relief only after hearing extensive evidence, including testimony by the former Georgia Commissioner of Insurance, about the illegal terms of the proposed Alabama settlement. Although recognizing the Alabama court's authority under *Phillips Petroleum Co. v. Shutts*, 472 U. S. 797 (II) (105 SC 2965, 86 LE2d 628) (1985) to settle the

multi-state class action, the trial court found that well-established principles of equity demanded that it intervene after appellees carried their burden of showing that the "purpose, or necessary effect, of [the Alabama action was] to obtain an unconscionable or inequitable advantage to which [appellants] would not be entitled in the domicile of the parties. [Cits.]" *McDaniel v. Alford*, 148 Ga. 609, 610 (1) (97 SE 673) (1918). Specifically, the trial court expressly found that appellants were parties in Alabama to a proposed class action settlement which imposed on Georgia members of the class terms that were "illegal and unconscionable" under Georgia law and which was entered into for the purpose of evading Georgia law.

The majority does not refute or otherwise challenge the trial court's findings about the illegality of the Alabama settlement. Nor can it challenge the trial court's subsequent finding that appellees are fully qualified to represent the putative Georgia plaintiffs in their class action, given this Court's *unanimous* denial of appellants' application for interlocutory appeal from the trial court's order certifying the Georgia class and finding that appellees will "fairly and adequately protect the interests" of that class. See *American Med. Sec. Group v. Parker*, Case No. S05I0274 (denied November 22, 2004). Instead, the majority reverses the trial court based on the misconception that appellees' standing, or lack thereof, to contest the Alabama class action somehow controls the issue whether appellees may seek and obtain injunctive relief to protect themselves and the Georgia plaintiffs they represent against the imminent and irreparable harm created by appellants' actions.

At this point it is important to stress that Georgia law has long recognized that Georgia courts have the authority under their inherent equitable powers to order any party over whom the court has personal jurisdiction to act or refrain from acting in regard to litigation being conducted in another state. *Sanders v. Yates*, 215 Ga. 218, 219 (109 SE2d 739) (1959) (court of equity may act in personam and direct parties by injunction to proceed no further in foreign state lawsuit); see also *Guerra v. Texaco Exploration & Prod. (In re Lease Oil Antitrust Litig. (No. II))*, 48 FSupp.2d 699, 704-705 (S.D. Tex. 1998) (court's injunctive power to control a party's actions extends to defendants and includes the power to enjoin defendants from entering into settlement agreements in cases pending in other courts).[9] This power of a court in equity to restrain all parties involved in litigation in a foreign court "rests upon the basis that the person

---

[9] Federal courts thus exercise this authority to prevent defendants before them from settling cases in other courts notwithstanding the additional constraints on their authority placed on them – but not on state courts – by Federal laws, such as the All Writs Act and the Anti-Injunction Act, 28 USC §§ 1651 and 2283.

whom it is sought to enjoin is within the jurisdiction of the court, and he can be prevented from doing an inequitable thing. [Cit.]" *Ambursen Hydraulic &c. Co. v. Northern Contracting Co.*, 140 Ga. 1, 7 (78 SE 340) (1913). The majority does not controvert that Georgia courts have the equitable authority to enjoin the actions of defendants such as appellants in circumstances involving the settlement of litigation initiated in other states.

However, the majority refuses to allow the trial court here to protect appellees and the other members of the Georgia class appellees represent because of appellees' lack of "standing." The majority's first error is confusing the commonality requirement of class actions, codified in Georgia in OCGA § 9-11-23 (a), with the legal analysis applicable to a request for injunctive relief. The correct legal analysis is not whether appellees have standing to contest the Alabama class action but whether they have shown the requisite imminent and irreparable harm required to justify the grant of equitable relief. See generally *Morton v. Gardner*, 242 Ga. 852, 856 (252 SE2d 413) (1979). The factual overlap that these two issues present should not confuse the separate legal analyses each issue involves. Appellees do not need "standing" as that term is defined in OCGA § 9-11-23 because they are not seeking here to intervene in or otherwise overturn the Alabama class action settlement.[10] Nor are they seeking to enjoin the Alabama court. It is beyond cavil that no Georgia court has any right or power to dictate the behavior of a sister state's judiciary. "The power of a court of equity to interfere by way of injunction with other judicial proceedings is not addressed to [the] other court but is directed to and acts *only* on the litigant party." (Footnote omitted; emphasis supplied.) 42 AmJur2d, Injunctions § 185, p. 776. See also *Atlantic Coast Line R. Co. v. Pope*, 209 Ga. 187, 189 (71 SE2d 243) (1952), rev'd on other grounds, 345 U. S. 379 (73 SC 749, 97 LE2d 1094) (1953).

All appellees sought was to protect their interests and the interests of the Georgia class they represent in the Georgia action from appellants' actions insofar as those actions adversely affected them. Thus, contrary to the majority's assertion, the trial court here was not legally required to determine appellees' "standing" to contest another state's class action ruling: it was only legally required to determine if appellees had carried their burden of showing that they stood to suffer imminent and irreparable harm as a result of appellants' actions. *Morton*, supra, 242 Ga. at 856. See also, e.g., *Commonwealth United Corp. v. Rothberg*, 221 Ga. 175, 176 (143 SE2d 741)

---

[10] Because appellees did not seek to intervene in the Alabama class action in order to object to the terms of the stipulation of settlement, the cases on which the majority relies, e.g., *Ex Parte Anderson (In re Dyer v. Monsanto Co.)*, 807 So2d 505 (Ala. 2000), see Majority Opinion, fn. 3, have no applicability whatsoever in this case.

(1965); *Ferrell v. Wight*, 187 Ga. 360 (4) (200 SE 271) (1938) (setting forth the general rule that an action at law will not be enjoined at the instance of a stranger to the proceeding who would not be bound by the judgment).

Looking to the substance of the majority's ruling, as opposed to the inappropriate nomenclature, the majority concludes appellees failed to show how they could be injured by appellants' actions in their individual capacities because the majority determined that appellees have been excluded as members of the Alabama class and thus cannot be affected by the settlement. However, the majority ignores the fact that the definition of the Alabama class had not received final approval at the time appellees sought and were awarded injunctive relief in Georgia. The record reflects that appellees' motion to enjoin appellants' actions was filed in May 2004 and granted in June 2004. No ruling approving the class definition had been entered as of the date this appeal was docketed in this Court in August 2004.[11] The majority's conclusion that appellees were not harmed as individuals is thus necessarily based on the premise that a party's "standing" is determined *not* on the facts existing at the time injunctive relief is sought and awarded; rather, it is determined on the *possibility* that the party might lose standing at some later point in time. The majority's conclusion is factually and legally insupportable.[12]

Nor is the majority's position aided by the Alabama court's "clarification" order that appellees would be excluded from the Alabama class. That order was not entered until *six weeks after* the injunctive relief was ordered. "[W]e are bound by law to consider only that evidence which the trial court had before it and which was in the record before the trial court when it made its ruling." *Baez v. State*, 206 Ga. App. 522, 528 (2) (425 SE2d 885) (1992). See also *T & R Custom v. Liberty Mut. Ins. Co.*, 227 Ga. App. 144 (1) (488 SE2d 705) (1997). By relying on the "clarification" order, the majority improperly seeks to justify its reversal of the trial court's order based upon a set of circumstances that did not exist at the time the ruling was issued.

The majority also rejects appellees' argument that they faced imminent and irreparable injury from appellants' behavior in their

---

[11] Appellants subsequently submitted a reply brief to which they attached a copy of the Alabama court's September 29, 2004 order certifying the class and approving the settlement.

[12] Likewise, the special concurrence overlooks numerous facts establishing that appellees did not "opt out" of the Alabama class action by filing the Georgia suit, namely, the uncontroverted evidence that appellees' suit was filed in ignorance of the pending Alabama suit; it was filed weeks before the Alabama court even temporarily approved the stipulation of settlement containing the proposed class definition; and the injunctive relief in this case was awarded *before* issuance of the notices setting forth the "opt out" date for membership in the Alabama class action.

capacity as representatives of all the putative plaintiffs in the Georgia class action. According to the majority, appellees seek to "do indirectly what they cannot do directly," but the majority then incorrectly asserts that appellees' goal is "to enjoin the Alabama settlement." The majority misunderstands both the applicable law and appellees' goal. Appellees' goal was to enjoin appellants' activities that undermined appellees' class action. To reach that goal, appellees did directly what they are fully authorized under Georgia law to do: obtain injunctive relief against a Georgia defendant whose litigation activities in another state threatened imminent and irreparable harm to appellees as representatives of all the unknowing Georgia victims of appellants' actions. There was no indirect action involved. Georgia law authorized the trial court to order appellants to desist with the settlement notice, i.e., " 'to proceed no further in such suit,' " because appellees had shown that " 'the purpose, or necessary effect, of such action [was] to obtain an unconscionable or inequitable advantage to which [appellants] would not be entitled in the domicile of the parties.' [Cit.]" *Sanders v. Yates*, supra, 215 Ga. at 219. The trial court exercised its equitable power in an appropriately sparing manner by enjoining appellants only in regard to their actions that affected the Georgia members of the Alabama class. See *Tennessee Farmers &c. Ins. Co. v. Wheeler*, 170 Ga. App. 380, 381-382 (2) (317 SE2d 269) (1984) ("[t]he power of a court to enjoin a party from proceeding with an action in the court of another state should be exercised 'sparingly, not capriciously, and not unless a clear equity is presented requiring the interposition of the court to prevent manifest wrong and injustice.' [Cits.]").

The majority incorrectly refuses to acknowledge the harm sustained by appellees, both individually and in their representative capacity on behalf of the unsuspecting victims of the unconscionable settlement appellants negotiated in Alabama. Instead, the majority has grafted an inapplicable "standing" requirement into Georgia law that serves only to aid and abet collusive behavior by out-of-state class action litigants. Instead of affirming a Georgia court's duty to uphold this State's law and protect our citizens, the majority empowers the stratagems of parties like appellants who would use class action litigation as a means of depriving Georgians of their legal rights and remedies. I cannot condone a result that is neither supported nor warranted by applicable Georgia law. I would recognize a Georgia court's authority to exercise its equitable powers to protect Georgia residents and prevent parties from evading Georgia law. Accordingly, I would affirm the trial court's grant of injunctive relief to appellees and uphold the trial court's finding that appellants acted in contempt of court when they failed to comply with the injunction order.

I am authorized to state that Justice Benham and Justice Hines join in this dissent.

DECIDED MARCH 31, 2005 —
RECONSIDERATION DENIED APRIL 14, 2005.

*Moore, Ingram, Johnson & Steele, Robert D. Ingram, Burr & Forman, Gregory F. Harley, Bruce H. Beerman, James E. Fleenor, Jr., Wilson F. Green, William C. Collins, Jr.,* for appellants.

*Roy E. Barnes, John F. Salter, Jr., Allison B. Salter, Jennifer A. Jordan, Hollis & Wright, L. Andrew Hollis, Jr., Steven W. Couch,* for appellees.