# CASES

### DECIDED IN THE

# SUPREME COURT OF GEORGIA

#### AT THE

## MARCH TERM, 1913

---

## AMBURSEN HYDRAULIC CONSTRUCTION COMPANY
### *v.* NORTHERN CONTRACTING COMPANY *et al.*

1. The pendency of a suit in one State between the same parties and for the same cause of action furnishes no cause to stay or abate a new suit brought in a court of another State.
2. This rule applies as well where the second suit is instituted by the defendant in the first suit as where the plaintiff in both actions is the same person.
3. The rule in equity is analogous to that at law, and the pendency in equity of the same cause of action between the same parties will not authorize an injunction against a subsequent action at law in another State by the defendant against the plaintiff, unless it appears that the prosecution of the second suit would be inequitable and unjust.
4. The facts of this case examined; and it is *held*, that the court should not have enjoined the prosecution of the common-law action for damages for breach of contract, brought by the defendant against the plaintiff in the first suit, in the State of New York, where the plaintiff had its corporate existence.

MAY 13, 1913.

Injunction. Before Judge Jones. Rabun superior court. January 27, 1913.

The Northern Contracting Company, a corporation of the State of New York, contracted with the Ambursen Hydraulic Construction Company, a corporation of the State of New Jersey, for the construction of a dam across the Tallulah river in Rabun county, Georgia. The contract was entered into on June 27, 1912, and

1

contains a provision that "the work herein embraced shall be wholly completed at a date not later than March 1st, 1913, time being of the essence hereof." It is further covenanted that if at any time during the work it should appear by report of the chief engineer of the Northern Contracting Company that the forces employed, the quantity or quality of tools, appliances, or workmen provided, or the progress of the work be not such as to insure the completion of the work within the stipulated time or according to specifications, the Northern Contracting Company may serve a written notice on the Ambursen Company to supply at once such increase of forces, appliances, or tools, and to cause such improvement in the character of the work, as to conform to specification; and that if on the expiration of ten days after the service of such notice the Ambursen Company shall have failed to furnish the Northern Contracting Company's engineer satisfactory evidence of the Ambursen Company's intention, efforts, and ability to immediately furnish the requisite material and workmen, and remedy the specified deficiencies, or if it shall appear that the Ambursen Company is insolvent or bankrupt, the Northern Contracting Company is empowered to "enter and take possession of the said work, or any part thereof, with the tools, materials, plant, appliances, houses, machinery, and other appurtenances and supplies thereon or used in connection with the work, and hold the same for security for any and all damage or liability that may arise by reason of the non-fulfillment of this contract within the time herein specified, and furthermore may employ the said tools, materials, plants, machinery, and other appurtenances and such other means as the company or its engineer may deem proper to complete the work, at the expense of the constructor, and may deduct the cost of the same from any payments then due or thereafter becoming due to the constructor, and the constructor shall pay the cost thereof to the company; or may declare such contract forfeited as it may elect."

On December 26, 1912, the Northern Contracting Company filed in the superior court of Rabun county its petition against the Ambursen Hydraulic Construction Company and its superintendent and agent in charge of the work of building the dam, who were temporarily residing in Rabun county, alleging: that the Ambursen Company in pursuance of its contract proceeded to erect a dam across the Tallulah river, when without excuse or justification it

abandoned its contract and ceased work on December 19th, 1912; that in view of the provisions of the contract that the work was to be completed within a specified time, and on the happening of the contingencies authorizing it so to do, the Northern Contracting Company entered upon and took possession of the work, together with the tools, materials, plant, appliances, houses, machinery, and other supplies thereon, and it purposes holding the same as security as provided in the contract, and to employ the same, together with such other appurtenances and other means as it and its engineer may deem proper, to complete the work according to the contract; that the Ambursen Company has not only its superintendent and agent but also more than one hundred employees upon the work, and has notified petitioner that they will not permit it or its employees to use their tools, materials, etc.; that petitioner has a force of laborers of its own engaged upon a part of the work; and that unless the Ambursen Company be restrained from interfering with petitioner in the use of the tools, materials, etc., there would be not only danger of violence, but the tools, materials, etc., would be injured or destroyed. Damage to the petitioner from the defendant's violation and abandonment of its contract was alleged. The prayers were, for judgment for breach of contract; for a decree ascertaining what are the tools, materials, etc., described in the contract, and held by petitioner as security for damages arising from the defendant's breach of contract; that petitioner be decreed to have a lien in the nature of a mortgage thereon to secure such sum as it may have for its damages; that the tools, materials, etc., be sold in satisfaction of any judgment which it may recover; for injunction against interference with the premises or with the tools, materials, etc.; for general relief and process. The defendants were served, on December 26, 1912, with a copy of the suit, process, and order of court temporarily restraining them as prayed.

On December 31, 1912, the Ambursen Hydraulic Construction Company and Burton Thompson filed in the Supreme Court of New York, in the county of Nassau, a suit against the Northern Contracting Company and the Georgia Railway and Power Company, alleging, that the contracting company had failed to comply with the contract in many particulars, by reason whereof the plaintiff was unable to carry out and perform the terms of the contract on its part; that the dam was being constructed on the

property of the Georgia Railway and Power Company; that this company guaranteed to the plaintiff the punctual performance of all things to be done, and the payment of all monies to be paid, by the Northern Contracting Company to it; but that the power company had failed to comply with its guaranty. The seizure of the personal property on the work belonging to the Ambursen Company was alleged; also that this company had sold to Burton Thompson an undivided half interest in it. Wherefore the plaintiffs demanded judgment that the defendants be required forthwith to deliver to the plaintiffs the personal property seized by the Northern Contracting Company; that it be decreed that the defendants had violated their contract and had no right to hold this property; that they be restrained from proceeding with the construction of the dam according to the plans prepared by the Ambursen Company and by the use of the plaintiffs' personal property; that an account be taken for damages caused by the detention of the personal property by the defendants, and that the plaintiffs have judgment therefor.

On January 11, 1913, the Northern Contracting Company amended its petition against the Ambursen Hydraulic Construction Company, alleging that after the service of the original suit the suit in the State of New York was filed in violation of the restraining order previously granted, and that its purpose was to defeat the jurisdiction of the superior court of Rabun county and to take the custody of the property to the State of New York. A copy of the indemnity contract and bond executed by the Georgia Railway and Power Company was attached. The prayer was for an injunction against the Ambursen Company from prosecuting its suit in New York.

The Ambursen Hydraulic Construction Company and Burton Thompson also, on December 31, 1912, brought a suit in the Supreme Court of New York, in the county of Nassau, against the Northern Contracting Company, to recover damages for breach of the contract between it and the Ambursen Company, alleging that before the commencement of the action the Ambursen Company had transferred to Burton Thompson an undivided half interest in the right of action. On January 16, 1913, the Northern Contracting Company again amended its petition in Rabun superior court, alleging the pendency of the action for breach of contract in the Su-

preme Court of New York; that the matters therein involved relate to the same contract and transactions in its original suit; that the maintenance of the suit in the State of New York is a great hardship to the Northern Contracting Company and subjects it to double litigation relating to the same cause of action, and has the effect of interfering with the jurisdiction of the superior court of Rabun county to fully adjudicate all matters contained in its original petition; and that the Northern Contracting Company has no property in the State of New York, so that there is no reason for a judgment against it in that State. The prayer of the amendment was to enjoin the Ambursen Company from prosecuting in the State of New York its action to recover damages for breach of contract. The Ambursen Company filed its answer, and an interlocutory hearing was had on the prayer for an injunction pendente lite. After hearing the evidence, the court rendered judgment, decreeing: "1. That the Georgia Railway & Power Company be made party plaintiff in this suit with the Northern Contracting Company. 2. That the plaintiff make a good and solvent bond in the sum of $100,000, conditioned to pay the defendant, the Ambursen Hydraulic Construction Company, any and all damages it may recover of plaintiff in this suit. 3. It is ordered that on said bond being made the restraining order heretofore granted on defendant's motion, preserving the status of the property and restraining the plaintiff from using the same, be and is vacated. 4. It is also ordered and adjudged that the defendant, its employees, agents, and servants are restrained and enjoined from doing any of the acts or things complained of in the original petition, until the further order of this court. 5. It is further ordered and adjudged that on said party plaintiff being made and bond made as herein required, and until the further order of this court, the defendant, Ambursen Construction Company, its officers, agents, attorneys, and servants, are restrained and enjoined from further proceeding with or prosecuting either of the two suits brought in New York, and complained of in the amended pleading of the plaintiff." Exception is taken to so much of this judgment as restrains the Ambursen Hydraulic Construction Company from prosecuting its common-law action pending in the Supreme Court of New York.

W. A. Charters and Robert C. & Philip H. Alston, for plaintiff in error.

King & Spalding and Underwood and H. H. Dean, contra.

EVANS, P. J. (After stating the foregoing facts.) The general rule is well settled that the pendency of a suit in one State between the same parties and for the same cause of action furnishes no cause to stay or abate a new suit brought in a court of another State. *Tarver* v. *Rankin,* 3 *Ga.* 210; *Chattanooga &c. R. Co.* v. *Jackson,* 86 *Ga.* 676 (13 S. E. 109). The more common instance of the application of this rule is where the plaintiff in the first suit is also the plaintiff in the second action. The rule, however, is not limited to cases where the plaintiff in both suits is the same person. If each of the parties to a contract claims that the other has breached it, each would be entitled to sue for the breach. The defendant in the first suit could recoup his damages of the plaintiff in that suit, but this right would not forbid his going into another State, where his adversary resides, and there bringing a suit to recover damages for a breach of the contract. If the defendant in such case can place his claim for damages in a more favorable condition to obtain redress; if his remedy in the State of his adversary party is more comprehensive, no sound reason appears to us why he may not go into the State of the other party to the contract alleged to have been breached and sue him there. It would be, indeed, anomalous for a resident of one State, claiming an action for breach of contract, to leave his own jurisdiction to sue for its breach, and to set up such prior suit in abatement of an action brought by the defendant against him in his own State to recover damages for a breach of the same contract. To grant such a privilege would be to allow a citizen of a State to evade its laws of remedial procedure, by instituting a suit in a foreign jurisdiction. Hence we conclude that the rule that the pendency of a prior suit in one State can not be pleaded in abatement of a suit between the same parties for the same cause of action in a court of another State applies as well where the second suit is instituted by the defendant in the first suit as where the plaintiff in both actions is the same person.

The circumstance that one of the suits may be pending in a court of equity and the other in a court of law does not alter the principle. Upon authority both English and American the Supreme Court of the United States has held that the plea of a former suit pending in equity for the same cause in a foreign jurisdiction will not abate an action at law in a domestic tribunal, or authorize an injunction

against prosecuting such action. Insurance Company *v.* Brune's Assignee, 96 U. S. 588 (24 L. ed. 737).

We do not contend that after a bill in equity has been filed, the court may not in a proper case enjoin the parties from litigating the whole or a part of the cause of action in a foreign court; but we do contend that the bare fact that a bill in equity is pending in this State, in the absence of equitable considerations, furnishes no ground to enjoin a defendant from suing on his claim in a foreign court, although the cause of action may arise out of the contract involved in the litigation in the equity court. Before the prosecution of the defendant's suit will be enjoined, the propriety and necessity of confining the litigation to the tribunal in which it is first instituted must appear. The power of a court of equity to restrain persons within its jurisdiction from prosecuting suits in a foreign court rests upon the basis that the person whom it is sought to enjoin is within the jurisdiction of the court, and he can be prevented from doing an inequitable thing. 22 Cyc. 813. The case of *Engel* v. *Scheuerman,* 40 *Ga.* 206 (2 Am. R. 573), is illustrative of the principle. In that case a Georgia creditor sued out an attachment against his non-resident debtor in this State. He also sued his debtor on the identical demand in the State of New York. His attachment suit was prosecuted to judgment and satisfied by payment. After the attachment judgment was paid the creditor assured the debtor that he would not further press the New York suit, but in violation of such assurance he prosecuted the New York suit to judgment. Thereupon the debtor filed a bill against the Georgia creditor in the county of his residence, to enjoin the enforcement of the New York judgment; and this court held that the creditor, a citizen of this State, having voluntarily sued his claim to judgment in the courts of this State, and accepted payment of the judgment, will be enjoined from collecting the claim for the second time in a foreign court.

In the case at bar the Northern Contracting Company contracted with the Ambursen Hydraulic Construction Company to construct a dam across the Tallulah river in Georgia. The former is a corporation of the State of New York, and the latter a corporation of the State of New Jersey. In the progress of the work differences arose between the contracting parties, each charging the other with a breach of the contract. Work was suspended. In

order to complete the dam within the stipulated time, the Northern Contracting Company entered upon the work and took possession of the tools, materials, etc., of the Ambursen Company. The contract gave it a right to do this under certain contingencies; and when this right was exercised, it was to hold this property as security for any damages sustained by a breach of the contract on the part of the Ambursen Company. In this situation the Northern Contracting Company brought a suit in Rabun county to recover damages for breach of contract, praying that the covenant granting to it the right to retain the personal property as security be treated as a mortgage and foreclosed as such; and for injunction against interference with the work of construction and the use of the defendant's tools, materials, etc. The temporary restraining order was no broader than the prayer for injunction. Afterwards the Ambursen Company, with another, alleged to be an assignee of a half interest in the subject-matter of the litigation, brought two actions in the Supreme Court of New York in the county of Nassau. The first concerned the personal property which was alleged to have been taken by the Northern Contracting Company, and the latter was a plain action at law for a breach of the contract. No point is made upon the injunction against prosecuting the suit in New York for the recovery of the personal property, but exception is taken to the injunction against prosecuting the action for breach of contract. Now let us see whether the case presented shows a necessity for confining the litigation for a breach of the contract to the superior court of Rabun county. The fact that the maintenance of the two suits will cause double litigation, inasmuch as they involve the same subject-matter, is insufficient cause for an injunction against prosecuting the common-law action in New York, for the reasons advanced in the first part of this opinion. The suit in New York is for a breach of contract, and in no way interferes with the possession by the Northern Contracting Company of the personal property of the Ambursen Company, alleged to have been taken into possession by the Northern Contracting Company pursuant to the contract. In other words, the prosecution of the breach-of-contract action in New York does not affect the res in possession of the Georgia court. The restraining order did not forbid the institution of the action. It only remains to determine whether it is unfair and against conscience for the Ambursen Com-

pany to sue the Northern Contracting Company, at the latter's home, for an alleged breach of contract, instead of submitting to the tribunal of a State selected by the other party. It is urged, as reasons for confining the litigation to the action filed in Rabun county, that that suit was first filed; that the court in which it pends is vested with full jurisdiction over the subject-matter; that the contract was to be performed in Georgia, and that the witnesses by whom the breach of contract and other relevant issues may be established are more accessible to the Georgia court. It is also urged that the Ambursen Company procured the Georgia Railway and Power Company to be made a party, and asked for and obtained from the court a protective bond. For all of which reasons it is claimed that it would be unfair and inequitable not to confine all of the litigation to the action first instituted by it. On the other hand, the Ambursen Company replies, that it has the legal right to sue the plaintiff in the venue of the latter's domicile; that the matters set up by the Northern Contracting Company against prosecuting an action against it in the State where it was incorporated relate solely to its own convenience; and that equity will not take away from the Ambursen Company its plain legal rights and require it to litigate in this State for the convenience of the other party, who prefers to submit the controversy to a foreign court rather than try the issues in a court of its legal residence. The Ambursen Company joined the Georgia Railway and Power Company with the Northern Contracting Company in its suit in New York concerning the personal property; but it does not appear from the record that the Georgia Railway and Power Company was made a party to this litigation at the instance of the Ambursen Company, or that it asked that the Northern Contracting Company be required to give bond to indemnify against a recovery of damages. But even if it did, we do not see how its effort to protect its property involved in the litigation should deprive it of its legal right to sue for damages for breach of contract in another State.

The joinder of Burton Thompson as a coplaintiff with the Ambursen Company in the New York suit is no ground for an injunction against the further prosecution of the action, even if the assignment be invalid. If both assignor and assignee are before the court as parties, the defendant is secure of all of its rights, and, further than they are involved, is not concerned with the question of title. *Gilmore* v. *Bangs, 55 Ga.* 405.

On the whole case, we think that the interlocutory judgment should be so modified as to relieve the Ambursen Hydraulic Construction Company from the injunction against prosecuting its common-law action for breach of contract in the State of New York.        *Judgment reversed. All the Justices concur.*