720 S.E.2d 377 (2011)
313 Ga. App. 124
AMERICAN MANAGEMENT SERVICES EAST, LLC et al
v.
FORT BENNING FAMILY COMMUNITIES, LLC et al.
No. A11A0855.
Court of Appeals of Georgia.
December 1, 2011.
*379 Page, Scranton, Sprouse, Tucker & Ford, Marcus B. Calhoun, Jr., Columbus, Greenberg Traurig, Michael James King, Atlanta, for appellants.
Buchanan & Land, Jerry Alan Buchanan, Columbus, Lori Marie Leonardo, for appellees.
BARNES, Presiding Judge.
Appellees Fort Benning Family Communities, LLC ("FBFC") and Fort Belvoir Residential Communities, LLC ("BRC") are owners of military housing projects at Fort Benning, Georgia and Fort Belvoir, Virginia. On May 20, 2010, they filed a complaint in Muscogee County Superior Court seeking a declaratory judgment that their property management agreements with appellant American Management Services East LLC ("AMSE"), their property manager, automatically terminated for cause because of AMSE's misconduct. They also alleged breach of fiduciary duty, fraud, conspiracy to commit fraud, and unjust enrichment, and sought an accounting. The parent company, American Management Services LLC d/b/a Pinnacle ("AMS"), was also named in the action.
AMSE and AMS answered and filed a counterclaim alleging, among other things, breach of the management agreement by FBFC and BRC. They also filed a general motion to dismiss the action, and a motion to dismiss the declaratory judgment claim related to termination of the Fort Belvoir management agreement under the doctrine of forum non conveniens, because the facility is located in Virginia.
While the motions were pending, AMS and AMSE, along with Pinnacle Belvoir, LLC and Clark Pinnacle Belvoir, LLC filed suit in the Circuit Court of Fairfax, Virginia against Clark Realty Capital, LLC, Clark Belvoir, LLC, Lawrence C. Nussdorf, Douglas Sandor, and W. Cleveland Johnson seeking a declaratory judgment to enforce certain rights related to the management agreement at the Fort Belvoir facility. They also alleged other claims, including abuse of process, breach of fiduciary agreement, and civil conspiracy. FBFC and BRC thereafter filed a motion in the Muscogee County Superior Court to enjoin AMS and AMSE from pursuing the Virginia action, which the trial court granted. The trial court also denied the motion of AMS and AMSE to dismiss the declaratory judgment claim for forum non conveniens. It is from that order that AMS and AMSE appeal.
"Generally, the granting of an injunction rests in the sound discretion of the trial judge and should not be resorted to except in clear and urgent cases.... The moving party has the burden of establishing the right to such relief." Robinson v. The Landings Association, 264 Ga. 24, 25, 440 S.E.2d 198 (1994). The grant of the injunction "will not be interfered with by this Court in the absence of a manifest abuse of discretion. [Cit.]" Cherokee County v. City of Holly Springs, 284Ga. 298, 301(2), 667 S.E.2d 78 (2008).
The facts pertinent to the appeal show that AMS, a property management firm which also conducts business as Pinnacle, and Clark Realty, a national general building contractor, entered into a joint venture known as "Clark Pinnacle," to bid on military housing privatization projects. Clark Pinnacle won four bids to establish private military housing facilities, including projects at Fort Benning and Fort Belvoir. Clark Pinnacle created limited liability companies ("Clark Pinnacle LLCs") to manage each project, which were 70 percent owned by Clark and 30 percent owned by Pinnacle. It formed Clark Pinnacle Belvoir LLC to operate the Fort Belvoir facility and Clark Pinnacle Benning LLC to operate the Fort Benning facility. In addition, each LLC had a Clark manager and Pinnacle manager, whose duties were defined by the LLC's operating agreement.
Clark Pinnacle Benning LLC and the United States Army thereafter entered into a limited liability company operating agreement to form FBFC who purpose was to *380 develop and operate the Fort Benning location. Likewise, BRC was formed under a similar agreement between Clark Pinnacle Belvoir LLC and the Army to develop and operate the Fort Belvoir facility.[1] FBFC and BRC entered into property management agreements with AMSE for the Fort Benning and Fort Belvoir facilities.
In granting the motion to enjoin AMS and AMSE ("appellants") from pursuing the Virginia action, the trial court first found it had jurisdiction over them because they had already subjected themselves to the trial court's jurisdiction by answering and filing a counterclaim in the underlying action. The trial court then found it had jurisdiction over the other two Virginia plaintiffs, Pinnacle Belvoir, LLC and Clark Pinnacle Belvoir, LLC, pursuant to OCGA § 9-11-65(d) because of their relationship with AMS and AMSE.[2]
The trial court further found that even though the "Georgia plaintiffs"FBFC and BRCwere not named in the Virginia action, they had standing to enjoin the Virginia action because "any decision made by the Virginia court would restrain the ability of the Georgia Plaintiffs to seek an independent remedy before the Superior Court in Muscogee County, Georgia." It also found that the "same issues, facts, and same parties lie before both the Circuit Court of Fairfax County, Virginia, and the Superior Court of Muscogee County, Georgia." Finally, the trial court determined that
[w]ithout an injunction, both this Court and the court in Virginia would be in a position to make legal and factual determinations as to the enforcement of the Belvoir [property management agreement] as well as to the rights of the parties and their behavior at both Fort Benning and Fort Belvoir, creating the possibility of conflicting opinions in different forums.
1. Appellants first argue that the trial court did not have jurisdiction to enter the injunction because FBFC and BRC were not parties to the Virginia action and therefore lacked standing to request the injunction. They also argue that the trial court could not exercise personal jurisdiction over the enjoined Virginia parties who were not involved in the Georgia action. We do not agree with appellants' jurisdictional argument, although we agree that, under these circumstances, the trial court had no personal jurisdiction over the two entities who were not parties to this case.
(a) To have standing to seek an interlocutory injunction, a party must have a legally protected interest that will be affected by the action sought to be enjoined. Ga. Power Co. v. Allied Chemical Corp., 233 Ga. 558, 560-561(1), 212 S.E.2d 628 (1975). Thus, in Georgia, in seeking injunctive relief a plaintiff must show that he is in great danger of suffering an imminent injury for which he does not have an adequate and complete remedy at law. See Hobbs v. Peavy, 210 Ga. 671, 673(4), 82 S.E.2d 224 (1954).
The appellants argue that because FBFC and BRC are not parties to the Virginia action, they have no vested interest in the case's outcome, and any judgment rendered in Virginia will not have a preclusive effect against them. They cite American Med. Security v. Parker, 279 Ga. 201, 612 S.E.2d 261 (2005) as authority. However, Parker holds that there is no standing where "rights and remedies" are not affected by the foreign action. In Parker, because the Alabama court found that the insureds were not part of the Alabama class, our Supreme Court held that as nonclass members whose rights and remedies were not affected by the Alabama settlement, the insureds had no standing to challenge that settlement on an individual basis. American Med. Security v. Parker, 279 Ga. at 204(2), 612 S.E.2d 261. It did not hold, as appellants maintain, that they were excluded only because they were *381 nonparties, but rather held that as a nonclass member of the lawsuit their rights and remedies were not affected by the Alabama settlement. To put it more colloquially, they had no dog in the fight.
Here, the Virginia plaintiffs sought, among other things, a declaration in that action to amend the Belvoir property management agreement which was signed by BRC, and is the centerpiece of the Georgia litigation, and a declaration that the Georgia plaintiffs have abused the process by pursuing the Georgia litigation. Both claims directly affect the pending litigation in Georgia. Further, because they are not parties to the Virginia action, a decision by the Virginia court could not only affect FBFC and BRC's rights and remedies in Georgia, but could also prevent them as nonparties from having any remedy in the Virginia action, essentially preventing them from having any recourse, whatsoever anywhere.
Thus, the trial court did not err in finding that FBFC and BRC had standing to seek the injunction because they demonstrated that they stood to suffer imminent and irreparable harm as a result of appellants' actions in the Virginia action.
(b) AMS and AMSE also contend that the trial court could not exercise personal jurisdiction over Pinnacle Belvoir and Clark Pinnacle Belvoir. Georgia courts have the authority under their inherent equitable powers to order any party over whom the court has personal jurisdiction to act or refrain from acting in regard to litigation being conducted in another state. Sanders v. Yates, 215 Ga. 218, 219, 109 S.E.2d 739 (1959) (court of equity may act in personam and direct parties by injunction to proceed no further in foreign state lawsuit).
Per the language of the injunction, the trial court enjoined "Pinnacle from proceeding directly and through the entities that it controls, including AMS, AMSE, and Pinnacle Belvoir, with its lawsuit in the Circuit Court of Fairfax County, Virginia, until further order of this Court." The trial court found that it had jurisdiction over Pinnacle Belvoir, LLC and Clark Pinnacle Belvoir, LLC, the additional Virginia plaintiffs, pursuant to OCGA § 9-11-65(d) because of their relationship with AMS and AMSE. The trial court found that "Pinnacle Belvoir is an affiliate of AMS. [BRC] entered into the Belvoir [property management agreement] with AMSE, an affiliate of AMS. Pinnacle controls and AMS CEO Stan Harrelson manages both of the other Virginia Plaintiffs, Pinnacle Belvoir and Clark Pinnacle Belvoir."
The appellants argue that the statute does not grant a trial court personal jurisdiction over a party's affiliates, but only identifies parties bound by a properly issued injunction. They argue that a trial court cannot extend an injunction to cover a nonparty either directly or indirectly without a finding that the nonparty fits into one of the categories listed in OCGA § 9-11-65(d), which provides that an injunction "is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive notice of the order by personal service or otherwise."
First, the statute does not require an express finding by a trial court that a nonparty falls within a particular category listed in OCGA § 9-11-65(d). Second, the trial court found that the two Virginia plaintiffs who were not parties to the Georgia suit were controlled by Virginia plaintiffsthe appellantswho are parties to the Georgia suit.
The trial court, therefore did not err in finding that its injunction binds Pinnacle Belvoir and Clark Pinnacle Belvoir. Extending the injunction to bind these two entities as "officers, agents, servants, employees ... attorneys, and ... persons in active concert and participation with them," does not literally extend actual personal jurisdiction over them so as to make them parties to the Georgia action. It simply prohibits the appellants from proceeding for their own gain indirectly through these entities in the Virginia court.
2. Appellants argue that even if the injunction is jurisdictionally sound, the trial court abused its discretion in granting it. They assert that abuse of discretion is evident where "a trial court awards injunctive relief without any evidence to support *382 such judgment and contrary to the law and equity."
The power of a court of equity to restrain a person within its jurisdiction from prosecuting a suit in a court of a foreign State rests upon the basis that the person whom it is sought to enjoin is under the jurisdiction of the court and can be prevented from doing an inequitable thing. When both parties to an action in a foreign State are domiciled in this State, a court of equity in this State can in personam direct the parties, by injunction, to proceed no further in such State. Such power is not to be exercised capriciously, ... but it is necessary that the complainant show that the action has for its purpose or necessary effect the obtaining of an inequitable or unconscionable advantage over the complainant. When such power is used, it acts only against the person of the resident plaintiff in the foreign suit, and not against the court itself, and should be exercised where not to exercise the power would be incompatible with equity and good conscience. The consideration in granting an injunction should overbalance the right of the party to bring his action in another State having jurisdiction of the parties and cause of action.
(Citations omitted.) Atlantic Coast Line R. Co. v. Pope, 209 Ga. 187, 188-189(1), 71 S.E.2d 243 (1952), rev'd on other grounds, Pope v. Atlantic Coast Line R. Co., 345 U.S. 379, 73 S.Ct. 749, 97 L.Ed. 1094 (1953). See Sanders v. Yates, 215 Ga. at 218, 109 S.E.2d 739 (injunctive relief proper where shown that purpose, or necessary effect, of enjoined action in foreign jurisdiction was to obtain unconscionable or inequitable advantage to which plaintiff would not be entitled in domicile of parties).
Appellants argue that the action in Georgia relates to whether AMS, AMSE, FBFC, and BRC performed their respective obligations under the property management agreements, and relate solely to the parties' conduct under the agreement. They assert that the Virginia claim is materially different, as it deals with the breach of operating and joint venture projects involving the Virginia defendants, and not the property management agreements. However, eight of the nine counts in the Virginia action either directly challenge the validity of the Georgia action, are based on the premise that the agreement or duty was breached by their pursuit of the Georgia action, or involved the Belvoir property management agreement, which is at issue in the Georgia action.
In Tenn. Farmers Mut. Ins. Co. v. Wheeler, 170 Ga.App. 380, 382(2), 317 S.E.2d 269 (1984), an insurer's answer pled defenses in tort and contract against the driver and the insureds in a wrongful death action in Georgia, and the insurer then filed a declaratory judgment action in Tennessee on the policy coverage issues. We held:
[h]ad the trial court not restrained appellant from proceeding with its declaratory judgment action in Tennessee, the trial court would have ceded its earlier acquired jurisdiction to the Tennessee courts ..., and the trial court's determination as to the coverage issues would have amounted to no more than an advisory opinion. A double burden would have been cast upon appellees and the possibility of conflicting opinions in the two forums allowed. We hold, therefore, that just as a trial court will not permit a party to initiate a new petition for declaratory judgment when a proceeding invoking the same issues is already pending in another forum, a trial court is authorized to grant injunctive relief to prevent a party under its jurisdiction from proceeding with such declaratory action in another forum when a declaratory proceeding in which the same issues may be raised is already pending in the trial court.
Id.
The dissent maintains that the trial court abused its discretion in granting the injunction because the record does not sustain the trial court's factual findings regarding all of the issues in each lawsuit. We have held, however, that
[t]his Court can only control the discretion of the Judge of the Superior Court where it has been manifestly abused. The law places the granting or refusal of an injunction in his, not our discretion. Though we may differ from him as to the soundness of *383 its exercise in any given case, we may not interfere unless the facts show manifest abuse of it.
Davis v. Weaver, 46 Ga. 626, 629 (1872). Moreover,
in determining whether or not there has been an abuse of discretion ... a conflict in evidence upon the hearing, which would authorize the judge to either grant or deny the injunction, must be a conflict in the evidence on material issues in the case. Where the plaintiff shows grounds for the grant of an injunction and shows that unless injunction is granted he will suffer irreparable injury, and there is conflict in some immaterial issues made in the case, it is error to refuse an interlocutory injunction to restrain the defendant.
(Citations and punctuation omitted; emphasis supplied.) Jones v. Lanier Dev. Co., 188 Ga. 141, 145-146, 2 S.E.2d 923 (1939).
Although the dissent takes great care in contrasting and distinguishing the claims in the Virginia complaint from those in the Georgia complaint, it is evident that many of the Virginia claims, including abuse of process, breach of the joint venture agreement, breach of fiduciary duties, and breach of the Belvoir Management Agreement, either directly overlap or indirectly impact the Georgia action. Contrary to the dissent's assertion that the trial court merely found that the "same issues" lie before both courts, the trial court made explicit factual findings about the Virginia claims and their impact on the claims in the Georgia action.
Thus, as the evidence supported the trial court's award of injunctive relief, there was no abuse of the trial court's discretion in so ordering.
3. There is no merit to the appellants' argument that the trial court disregarded important principles of comity and state in issuing the injunction. In this case, there has been no ruling by the Virginia court, nor does the injunction usurp the Virginia Court's authority.
Judgment affirmed.
MILLER, P.J., PHIPPS, P.J., ELLINGTON and ADAMS, JJ., concur.
DOYLE and BLACKWELL, JJ., dissent.
BLACKWELL, Judge, dissenting.
Based on a finding that this case and the Virginia lawsuit present "[t]he same issues," the court below enjoined Pinnacle[3] from continuing to prosecute any aspect of the Virginia lawsuit. That, I think, was an abuse of discretion because, although the two lawsuits may present some of the same issues, not all the issues are the same, and the court below, apparently not appreciating the distinct issues presented in the Virginia lawsuit, failed to consider whether its injunction ought to sweep less broadly and whether Pinnacle ought to be permitted to continue to prosecute at least some of its claims in Virginia. Accordingly, I would vacate the injunction entered below and remand for reconsideration of the motion for an interlocutory injunction. Because the majority does not do so, I respectfully dissent.[4]
The facts are complicated, but I will try to explain them as simply as I can. Several years ago, Clark Realty Capital, LLC, a construction firm, and Pinnacle, a property management firm, joined together to bid for the opportunity to maintain and manage military housing units at several installations across the country, and their joint venture won the opportunity to do so at, among other installations, Fort Benning, Georgia and Fort Belvoir, Virginia. To maintain and manage the housing units at Fort Belvoir, Clark Belvoir, LLC, an affiliate of Clark Realty, and Pinnacle Belvoir, LLC, an affiliate of Pinnacle, formed Clark Pinnacle Belvoir, LLC, in which Clark Belvoir has a 70 percent ownership interest and Pinnacle Belvoir has a 30 percent ownership interest. Clark Pinnacle *384 Belvoir and the Army, in turn, formed Fort Belvoir Residential Communities, LLC, in which Clark Pinnacle Belvoir has a 51 percent ownership interest. Fort Belvoir Residential Communities owns the housing units at Fort Belvoir that Clark Realty and Pinnacle won the right to maintain and manage. In many respects, Pinnacle says, Clark Realty effectively controls Fort Belvoir Residential Communities, inasmuch as Clark Realty is the manager of Clark Pinnacle Belvoir, which, in turn, is the managing member of Fort Belvoir Residential Communities. But with respect to any adjustment of a property management agreement to which Fort Belvoir Residential Communities is a party, Pinnacle Belvoir has effective control of Fort Belvoir Residential Communities, Pinnacle claims, because under the operating agreement for Clark Pinnacle Belvoir, both Clark Realty and Pinnacle Belvoir must vote on any such adjustment, and if there is a tie, Pinnacle Belvoir has the right to break the tie. Similar entities apparently were formed for the maintenance and management of housing units at Fort Benning, including Fort Benning Family Communities, LLC, which owns the housing units there.
Fort Belvoir Residential Communities and Fort Benning Family Communities each entered into a property management agreement with Pinnacle, by which Pinnacle would provide property management services at the two installations. Each property management agreement provides, among other things, that the agreement terminates upon the occurrence of any "theft, fraud, or other knowing or intentional misconduct by [Pinnacle] or its employees or agents." Clark Realty later came to believe that Pinnacle and certain Pinnacle employees were engaged in fraud at both installations, and both Fort Benning Family Communities and Fort Belvoir Residential Communities filed this lawsuit against Pinnacle, seeking a declaratory judgment that their property management agreements were terminated, as well as damages for breach of fiduciary duty, fraud, and unjust enrichment.
After this lawsuit was filed, Pinnacle Belvoir invoked its rights under the operating agreement for Clark Pinnacle Belvoir and proposed an adjustment to the property management agreement between Fort Belvoir Residential Communities and Pinnacle. Not surprisingly, the proposed adjustment would amend the property management agreement to give Pinnacle an opportunity to cure any "theft, fraud, or other knowing or intentional misconduct" prior to termination of the property management agreement. Clark Realty apparently refused to vote on the proposal, thereby depriving, Pinnacle says, Pinnacle Belvoir of the opportunity to break the tie and force an amendment of the property management agreement.
Pinnacle and Pinnacle Belvoir then filed a lawsuit in Virginia against Clark Realty and Clark Belvoir, in which they seek a declaratory judgment as to the rights of Pinnacle Belvoir under the operating agreement of Clark Pinnacle Belvoir to inspect its books and records and to propose and require a vote on the adjustment of the property management agreement for the housing units at Fort Belvoir. They also seek a declaratory judgment that, unless and until the Georgia court rules otherwise, the property management agreement at Fort Belvoir remains in effect. Finally, they allege that Clark Realty and its affiliates and officers are engaged in a scheme to deprive Pinnacle of its interest in the joint venture nationally, including by causing Fort Benning Family Communities and Fort Belvoir Residential Communities to file the lawsuit in Georgia, which, Pinnacle and Pinnacle Belvoir claim, is without merit and concerns matters so inconsequential or trivial that Fort Belvoir Residential Communities ought not pursue such a lawsuit in any event. Based on these allegations, Pinnacle and Pinnacle Belvoir seek damages from Clark Realty and its affiliates and officers.
Fort Benning Family Communities and Fort Belvoir Residential Communities moved the court below to enjoin Pinnacle from pursuing the Virginia litigation, and the court granted the motion. In its order, the court below found that "[t]he same issues, facts, and same parties lie before both the Circuit Court of Fairfax County, Virginia, and the Superior Court of Muscogee County, Georgia," explaining, among other things, that "Count II of the Virginia complaint seeks to *385 amend the [Fort] Belvoir [property management agreement]." Based on these findings, the court below enjoined Pinnacle from "proceeding... with its lawsuit in the Circuit Court of Fairfax County, Virginia." There is no indication that the court considered any distinct issues raised in Virginia or whether a more limited injunction would be in order.
Whether to grant an interlocutory injunction is committed to the discretion of the trial court, but if, in the exercise of that discretion, a trial court relies upon a finding of fact that the record cannot sustain or misapplies the law, it abuses its discretion. See Mathis v. BellSouth Telecommunications, 301 Ga. App. 881, 881, 690 S.E.2d 210 (2010) (decision is an abuse of discretion if it is "unsupported by any evidence of record or where [the] ruling misstates or misapplies the relevant law"); see also Glisson v. Global Security Svcs., 287 Ga.App. 640, 640, 653 S.E.2d 85 (2007) (an abuse of discretion occurs "if a trial judge awards injunctive relief `without any evidence to support such judgment and contrary to the law and equity'") (citation omitted); Allen v. Hub Cap Heaven, Inc., 225 Ga.App. 533, 534, 484 S.E.2d 259 (1997). Here, the record does not sustain the findings about the nature of the issues presented in the Virginia case on which the court based its injunction, and for that reason, the court abused its discretion, and we must vacate the injunction and remand for further proceedings.
The court below found that the "[s]ame issues" are presented in both lawsuits, but from the record, it is apparent, I think, that not all the same issues are presented in each lawsuit, even if some common issues appear in both. The Virginia lawsuit seeks, for instance, a declaration of the right of Pinnacle Belvoir to inspect the books and records of Clark Pinnacle Belvoir. Whether Pinnacle Belvoir has a right to inspect those books and records, as far as I can see, has nothing to do with whether Pinnacle has breached any property management agreement and does not depend at all on the resolution of any issue presented in the Georgia case. Likewise, the court below misconstrued, I think, the claim in Virginia concerning the right of Pinnacle Belvoir under the Clark Pinnacle Belvoir operating agreement to propose and have a vote on an adjustment of the property management agreement for Fort Belvoir. The court, as noted above, characterized this claim as one "to amend" the property management agreement. But the Virginia complaint does not ask the Virginia court to order any changes to the property management agreement, and it instead asks the Virginia court only to declare whether Clark Realty can be required to vote on the proposal to amend the property management agreement and whether Pinnacle Belvoir has the right to break a tie. The issues raised by these claims are issues that concern the corporate governance of Clark Pinnacle Belvoir, and those are issues that are not before the Georgia court.
It is true, of course, that the assertion of these claims in Virginia may be motivated by the Georgia litigation, but I wonder if that ought to matter. If Pinnacle Belvoir has the rights that it claims under the operating agreement for Clark Pinnacle Belvoir, for instance, I am not certain that Pinnacle Belvoir properly can be divested of those rights simply because it has certain motives for exercising them. If motives matter, it is only because the operating agreement for Clark Pinnacle Belvoir or the law applicable to that operating agreement says so, but the operating agreement is not something that is before the Georgia court. And in any event, the court below did not even consider these questions because it apparently failed to appreciate that some of the issues presented in the two cases are not, in fact, the same.
It also is true that, if Pinnacle is permitted to proceed with these claims in Virginia, the Virginia court might award relief to Pinnacle that has some implications for the Georgia case, but it is not apparent that this possibility makes a difference. Fort Benning Family Communities and Fort Belvoir Residential Communities argued below that the demand to inspect the books and records of Clark Pinnacle Belvoir is simply an attempt to obtain discovery for the Georgia lawsuit by means other than those authorized by the Civil Practice Act, but so what if it is? Parties obtain discovery by other legal means interviewing independent witnesses, searching *386 their own records, searching public records, and asking others to voluntarily make records and information availablein all kinds of litigation. If Pinnacle Belvoir, in fact, has an unconditional right under the operating agreement of Clark Pinnacle Belvoir to inspect the books and records of that entity, I am not sure that it should be divested of that right simply because the books and records might be used in other litigation.
If the Virginia court declares that Pinnacle Belvoir has the right to require Clark Realty to vote on any change in the property management agreement at Fort Belvoir and has the right to break any tie, it might, of course, result in Pinnacle Belvoir actually effecting such a change, which might then affect the outcome of the Georgia litigation. But we regularly see cases in which the outcome is driven by business decisions that the parties or their affiliates made after the filing of the cases, decisions that they had every right to make, notwithstanding the pendency of litigation. And if Pinnacle Belvoir, in fact, has the right it claims with respect to a change in the property management agreement, that may be unfortunate for Clark Realty and its affiliates, but that is the operating agreement into which they entered. I am not confident that the existence of litigation that does not concern the operating agreement affords a basis for an injunction that may effectively strip Pinnacle Belvoir of its rights under the operating agreement.
"[T]he pendency of a suit in one State ... furnishes no cause to stay or abate a new suit brought in a court of another State," even when the suits involve the same parties and causes of action, Ambursen Hydraulic Constr. Co. v. Northern Contracting Co., 140 Ga. 1, 6, 78 S.E. 340 (1913), unless it appears that the party to be enjoined is attempting to do "an inequitable thing." Id. at 7, 78 S.E. 340. If Pinnacle Belvoir has the rights that it claims under the operating agreement for Clark Pinnacle Belvoir, I am not sure that it is inequitable for Pinnacle Belvoir to seek to vindicate those rights just because some related entities are involved in related litigation in Georgia or because it might be motivated by the Georgia litigation. And whether Pinnacle Belvoir has the rights it claims is a question that concerns the corporate governance of Clark Pinnacle Belvoir, a company organized under the laws of Virginia and apparently having its principal place of business in Virginia. The principle of comity, I think, ought to make us wary of an injunction that effectively prevents a Virginia court from passing upon the governance of a Virginia company under Virginia law, especially when the same issues of governance are not squarely presented in the court below. See generally American Med. Security v. Parker, 279 Ga. 201, 207-208, 612 S.E.2d 261 (2005) (Carley, J., concurring) (discussing principle of comity). In any event, there is no indication that the court below considered any of these questions when it issued an injunction in this case.
To be sure, some of the issues presented in the Georgia and Virginia cases are the same. The claim in Virginia that the property management agreement for Fort Belvoir remains in effect raises a question about whether the agreement already has terminated by its own terms upon the occurrence of "theft, fraud, or other knowing or intentional misconduct" by Pinnacle, an issue squarely presented in the Georgia case. And to the extent that Pinnacle seeks damages in Virginia for the bringing of a lawsuit in Georgia that, Pinnacle claims, has no merit or concerns inconsequential and trivial things, its claims directly implicate the merits of the case below. So, I do not doubt that the court below might properly enter some injunction with respect to the Virginia lawsuit. And perhaps it might even properly enter the injunction that it did, barring Pinnacle from pursuing all of its claims in Virginia. But if it is to do so, the court below must, I think, correctly assess the facts, including what precisely is at issue in the Virginia litigation. Because the court did not do so, I would vacate the injunction and remand for further proceedings.
I am authorized to state that Judge DOYLE joins in this dissent.
NOTES
[1] The Military Housing Privatization Initiative ("MHPI") was established by Congress in 1996 to facilitate privatization of military housing. In doing so, MHPI was authorized to enter into agreements with private developers to own, maintain, and operate military housing.
[2] The statute provides that the court's injunctions bind not only the direct parties to the action, but also the parties' "officers, agents, servants, employees..., attorneys, and ... persons in active concert or participation with them." OCGA § 9-11-65(d).
[3] By "Pinnacle," I mean American Management Services LLC and American Management Services East LLC, the defendants in the court below.
[4] I agree with the majority that the plaintiffs in this case have standing to seek an injunction and that, although the court below could not directly enjoin Pinnacle affiliates that were not before it, it could enjoin Pinnacle from acting through those affiliates to circumvent its injunction.